60 Cal.App.4th 1136 (1998)
BRIAN F. SEARS, Plaintiff and Appellant,
v.
MARTIN H. BACCAGLIO, Defendant and Appellant.
Docket No. A070295.
Court of Appeals of California, First District, Division Two.
January 14, 1998.
*1138 COUNSEL
Christopher Ream for Plaintiff and Appellant.
Berliner Cohen, Frank R. Ubhaus and Jeffrey S. Stone for Defendant and Appellant.
[Opinion certified for partial publication.[*]]
*1139 OPINION
LAMBDEN, J.
This opinion considers a question which routinely troubles trial courts attempting to identify the "prevailing party" for the purpose of awarding attorney's fees resulting from litigation of contracts. Periodic legislative modification of the "American" rule provided by Code of Civil Procedure section 1021, which generally requires litigants to pay their own attorney fees, has created uncertainty over the extent of trial court discretion to award fees. This has been particularly apparent in cases where there are multiple issues and parties, where there is recovery of extrajudicial or nontangible benefits, and where the line between "winner" and "loser" is not finely drawn. The two basic statutes regularly employed by the courts to award fees in contract cases, Code of Civil Procedure section 1032 (section 1032) and Civil Code section 1717 (section 1717) differ in their analytic approach to the issue. Trial courts may have little difficulty applying these statutes to simple victories, and within their express boundaries, but occasionally struggle to avoid an inequitable result seemingly prescribed by them. Prior appellate opinions have either taken a narrow view of the questions raised by the statutory collage created by the Legislature or have assumed, as though obvious, an inherent, equitable compensating component in the court's power to award fees. We conclude these statutes can be reconciled to inform the entire process of fee allocation while answering the specific question posed by this case:
Can a party denied additional damages on his cross-complaint, and ordered to return part of a payment on the complaint, be considered the "prevailing party" entitled to attorney's fees pursuant to section 1717? Appellant Brian F. Sears raises this question on appeal and we answer affirmatively: A party can fail to recover a net monetary judgment and yet prevail for purposes of collecting fees in an action founded in contract. The trial court did not abuse its discretion when it relied on section 1717 to award costs, including attorney's fees, to respondent Martin H. Baccaglio.
In the unpublished portion of this opinion we consider Baccaglio's assertion, on cross-appeal, that the trial court abused its discretion when it granted Sears's motion to amend his complaint and fixed 1989 as the date for interest to accumulate on the disputed overpayment. Baccaglio concedes he suffered no prejudice from the court's granting the motion to amend if this court affirms the award of attorney's fees; accordingly, Baccaglio's cross-appeal challenging the amendment of the complaint is moot. The trial court neither erred nor abused its discretion in fixing the date interest should begin, because Baccaglio failed to present contrary evidence at trial.
*1140 We affirm the trial court's judgment.

BACKGROUND
On April 13, 1984, New Tonko Corporation (Tonko) signed a five-year lease of a building owned by American Tempering, Inc. (AT). The lease required a bank letter of credit to secure Tonko's performance. Tonko's inability to obtain such a letter of credit jeopardized AT's attempts to sell the building to Robert Cucinotta. Consequently, AT persuaded Sears, the principal shareholder of Tonko, to substitute a personal guaranty and secure it with a $200,000 deed of trust on his home. According to Sears, AT orally promised he could later replace the guaranty with other assurance.
On May 3, 1984, Sears signed the guaranty, which stated he "unconditionally and irrevocably" guaranteed the performance of the lease by the lessee and agreed the lessor could assign the lease. The lease could be "altered, affected, modified or changed by agreement between Lessor and Lessee." Additionally, the guarantor "shall thereupon and thereafter guarantee the performance of said Lease as so changed, modified, altered or assigned." The guaranty required payment of reasonable attorney's fees to the prevailing party in any legal action concerning the guaranty.
Cucinotta later sold the building to Baccaglio. The lease and the guaranty were delivered to Baccaglio, who purchased the building in good faith and for value. Sears sold his principal ownership in Tonko, but Tonko remained on the lease. Within months, Tonko failed to pay the rent due on the lease and Sears, "seeing the handwriting on the wall," gave notice of revocation of the guaranty on April 11, 1986.
In June of 1986, Baccaglio agreed with the new owners of Tonko to alter the terms of the lease, so another company could re-lease 25 percent of the leased space. However, Tonko filed bankruptcy in July 1986 and defaulted under the altered lease.
Baccaglio estimated he lost $112,000 from Tonko's default and demanded the money from Sears. Sears needed to clear title to his house, and Baccaglio agreed to return the $200,000 deed of trust for $112,000. On May 4, 1987, Sears paid the $112,000 under protest. Years later, Baccaglio received an additional $33,512.74 from Tonko's bankruptcy estate on March 2, 1994, which is the date on the checks sent to Baccaglio by Tonko's bankruptcy trustee, and of which this court has taken judicial notice.
On February 24, 1988, Sears sued Baccaglio for breach of contract, declaratory relief, and bad faith denial of existence of contract. He prayed *1141 for $112,000 in damages and alleged the guaranty no longer existed, not only because of his revocation but also as the result of Baccaglio's material modification of the lease without Sears's consent. Baccaglio cross-complained for an additional $5,461.27. In 1994, on the first day of trial, Sears amended the complaint to allege Baccaglio suffered damages substantially less than $112,000.

DISCUSSION
The court bifurcated the trial to hear the contract claims first, and then, if necessary, to determine damages. After two days of trial, the court issued a tentative decision, delineating the three issues in the case: "[F]irst, is the guaranty of a lease a continuing guarantee as defined by Section 2814 of the Civil Code? Second, if it is, can a writing signed by the guarantor in which he states that he `unconditionally and irrevocably guarantees' the performance of the lease be valid in the face of Section 2815 of the Civil Code stating that a continuing guarantee may be revoked at any time by the guarantor? Third, if the instrument in this case was in fact a continuing guaranty and was not revoked may a guarantor who has agreed that the underlying obligation may be `altered, affected, modified or changed by agreement' and whose underlying burden is in fact lightened by such a modification take advantage of Section 2819 of the Civil Code exonerating the guarantor where the original obligation is altered `in any respect'?"
The court found Sears liable based on the guaranty and ordered a further hearing to determine the extent of his liability.
After the damages hearing, the court found Tonko owed $291,556.54 on the lease, but further found Baccaglio had already received $359,386 ($33,513 from Tonko's bankruptcy estate, $204,753 from rent received in mitigation, $9,120 from the security deposit, and $112,000 from Sears). In the judgment, Sears recovered $67,829.46 plus 10 percent interest calculated from May 4, 1987, and Baccaglio received nothing on his cross-complaint.
(1a) The parties briefed the court regarding the attorney's fees which were sought under section 1717, and the court awarded Baccaglio his fees after finding he prevailed on the contract issue. The court explained its ruling: "In short the whole thrust of this Court's decision is to give effect to the guaranty (which was hotly disputed) and award Baccaglio the damages to which he was entitled under that contract. By no stretch of the imagination can Sears claim that he was in fact the prevailing party because, having lost on his principal claim that the contract was ineffective, he recovered more of the $112,000 than Baccaglio."
*1142 Section 1032, subdivisions (a)(4) and (b), states: "(4) `Prevailing party' includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant. When any party recovers other than monetary relief and in situations other than as specified, the `prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed may apportion costs between the parties on the same or adverse sides pursuant to rules adopted under Section 1034. [¶] (b) Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding."
Sears incorrectly concludes the Code of Civil Procedure provides the only statutory basis permitting an award of fees in this case. While it is true Code of Civil Procedure section 1033.5 allows fees to be considered as costs in contract cases under section 1032, it does not follow that section 1032 is the exclusive statute governing recovery of fees in contract actions. By its own terms, section 1032 defines prevailing party only for "costs" under that section and does not purport to define it for other statutes. (Heather Farms Homeowners Assn. v. Robinson (1994) 21 Cal. App.4th 1568, 1572 [26 Cal. Rptr.2d 758].) Courts have consistently held the prevailing party for the award of costs under section 1032 is not necessarily the prevailing party for the award of attorney's fees in contract actions under section 1717. (See McLarand, Vasquez & Partners, Inc. v. Downey Savings & Loan Assn. (1991) 231 Cal. App.3d 1450, 1456 [282 Cal. Rptr. 828]  "We emphatically reject the contention that the prevailing party for the award of costs under section 1032 is necessarily the prevailing party for the award of attorneys' fees"; Nasser v. Superior Court (1984) 156 Cal. App.3d 52, 59-62 [202 Cal. Rptr. 552]  the party awarded costs under section 1032 is not the prevailing party under section 1717.)

I. Attorney's Fees Under Sections 1717 and 1032

A. Sears ignores application of section 1717

Sears ignores section 1717, and insists his costs and fees should have been awarded as matter of right under section 1032 because he obtained a "net monetary recovery." Section 1717 states: "(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in *1143 the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. [¶] ... [¶] [T]he party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract." The definition of prevailing party under section 1717 thus differs significantly from section 1032. Rather than focusing on who receives the net monetary award, section 1717 defines the prevailing party as the one who recovers "a greater relief in the action on the contract."
With one exception, every case Sears cites to bolster his argument involved the law prior to the effective date of section 1717 in 1968. (Distefano v. Hall (1968) 263 Cal. App.2d 380 [69 Cal. Rptr. 691]; Moss Construction Co. v. Wulffsohn (1953) 116 Cal. App.2d 203, 205 [253 P.2d 483].) Haire v. Stevenson (1987) 196 Cal. App.3d 1249 [242 Cal. Rptr. 433] is distinguishable as an action solely seeking costs. Thus, these holdings are useful only to interpret section 1032 and do not limit the application of section 1717.
Public Employees' Retirement System v. Winston (1989) 209 Cal. App.3d 205 [258 Cal. Rptr. 612] (PERS), the single case cited by Sears which applies section 1717, also does not support Sears's argument. In PERS, the court reversed after concluding the deposit Winston paid should have offset the rent he owed, creating a refund for Winston. To explain why PERS, as a matter of law, could not be considered the prevailing party, the court did not focus exclusively on Winston's monetary award; instead, it stressed Winston had prevailed on his cross-claim for retroactive rent abatement and that PERS had lost on its claim of breach of the lease agreement. (209 Cal. App.3d at p. 211.) The court concluded, "[f]or these reasons," it was reversing making it clear Winston's success in the contract action combined with his net judgment made him the prevailing party. (Ibid., italics added.)
To address Sears's argument, we examine the legislative history of Civil Code section 1717 and explain the reasons for applying section 1717 and its definition of prevailing party to this case. Additionally, we examine Code of Civil Procedure section 1032, and find that under both sections the court retains ultimate discretion when awarding attorney's fees, not only as to the amount but also in the choice of the statutory basis for the award and in the identification of the prevailing party.

B. The legislative history of section 1717

The Legislature codified what has become commonly known as the "American" rule regarding attorney's fees in 1872, when it enacted Code of Civil Procedure section 1021, which states, in pertinent part: "`Except as attorney's fees are specifically provided for by statute, the measure and *1144 mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties....' (See, e.g., Bruno v. Bell (1979) 91 Cal. App.3d 776, 781 [154 Cal. Rptr. 435] [154 Cal. Rptr. 435]....)" (Trope v. Katz (1995) 11 Cal.4th 274, 278-279 [45 Cal. Rptr.2d 241, 902 P.2d 259].) As commonly understood, the American rule provides each party to a lawsuit must ordinarily pay his or her own attorney's fees. (Gray v. Don Miller & Associates, Inc. (1984) 35 Cal.3d 498, 504 [198 Cal. Rptr. 551, 674 P.2d 253, 44 A.L.R.4th 763]; United Services Auto. Assn. v. Dalrymple (1991) 232 Cal. App.3d 182, 187 [283 Cal. Rptr. 330].) The American rule is contrasted with the "English" rule, under which a losing party may be required to pay the winner's fees in addition to his or her own expenses. (See generally, Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 2d ed. 1996) ch. 7, p. 7-1.)
The Legislature has since enacted several statutory modifications of the American rule and the Supreme Court has relied on its inherent equitable authority to develop additional exceptions, including the common fund, substantial benefit, and private attorney general theories of recovery. This case concerns the most common situation where the American rule does not apply: when there is an agreement, express or implied, allocating attorney's fees (see Trope v. Katz, supra, 11 Cal.4th at p. 279).
Civil Code section 1717 has long been understood to restrict and condition the ability granted by Code of Civil Procedure section 1021 to "contract out" of the American rule by executing an agreement which purports to allocate the right to attorney's fees. Indeed, section 1717 was originally enacted to limit the ability of a dominant contracting party to provide for a right to attorney's fees on only one side of an agreement. (See Palmer v. Shawback (1993) 17 Cal. App.4th 296, 299-300 [21 Cal. Rptr.2d 575]; Lerner v. Ward (1993) 13 Cal. App.4th 155, 159-161 [16 Cal. Rptr.2d 486]; Xuereb v. Marcus & Millichap, Inc. (1992) 3 Cal. App.4th 1338, 1341-1342 [5 Cal. Rptr.2d 154] (Xuereb); see also Hsu v. Abbara (1995) 9 Cal.4th 863, 868, fn. 3 [39 Cal. Rptr.2d 824, 891 P.2d 804] (Hsu).)
Section 1717 was added to the Civil Code in 1968, by the provisions of Assembly Bill No. 563. In its original form, the bill would have adopted the English rule and awarded fees as costs to the prevailing party in all contract actions. The matter was heard by both the Assembly and Senate Judiciary Committees where its impact upon certain other statutory provisions, such as the Unruh Act, Civil Code section 1811.1, and the "Rees-Levering Act," Civil Code section 2983.4, was noted, as was its obvious impairment of the right to contract and its potential effect upon recourse to the courts. As ultimately enacted, the bill added section 1717 to provide for reciprocity in *1145 contract actions where the agreement specifically provided for attorney's fees and costs to be recoverable by one party, otherwise known as a "unilateral" fee provision.
Section 1717 was first amended in 1981 by Senate Bill No. 1028 (1981-1982 Reg. Sess.). As introduced, Senate Bill No. 1028 would have amended section 1717 to provide for attorney's fees to be an element of costs and for the trial court to identify the prevailing party. The bill was heard by both the Senate and Assembly Committees on the Judiciary and was modified in two particulars: to provide that reasonable attorney's fees would be fixed by the court; and that the court would determine the prevailing party whether or not the suit proceeded to final judgment. The bill was approved by the Legislature, signed by the Governor, and enacted on September 28, 1981.
Among the background materials which appear in the legislative history of Senate Bill No. 1028, were references to appellate cases which either clarified or expanded the coverage of section 1717. The case of T.E.D. Bearing Co. v. Walter E. Heller & Co. (1974) 38 Cal. App.3d 59 [112 Cal. Rptr. 910] (T.E.D.), was observed to have held that section 1717, in addition to creating a bilateral contractual obligation where a unilateral fee provision previously existed, also changed the contractual right into a statutory one; and that thereafter attorney's fees were to be seen as allowed by statute, rather than by contract, and therefore proper as an item of costs. It was also noted that Beneficial Standard Properties, Inc. v. Scharps (1977) 67 Cal. App.3d 227 [136 Cal. Rptr. 549] (Beneficial Standard) expanded the holding of the T.E.D. case and held that under a contract provision establishing a bilateral right to attorney's fees, section 1717 allowed attorney's fees to be treated either as statutory costs or as contractual damages. The Beneficial Standard court specifically held its interpretation of section 1717 eliminated the need to plead attorney's fees as special damages and allowed litigants to obtain attorney's fees as costs by filing a motion.
The materials available to the Legislature in connection with this amendment also noted the case of Mabee v. Nurseryland Garden Centers, Inc. (1979) 88 Cal. App.3d 420 [152 Cal. Rptr. 31] (Mabee), which directly conflicted with Beneficial Standard and held that a bilateral attorney's fees provision could not allow attorney's fees to be treated as costs because the sole purpose of section 1717 was to transform a unilateral right into a bilateral right.
The arguments in support of the 1981 amendment assumed as correct the Beneficial Standard court's expansive view allowing attorney's fees to be awarded by the court under section 1717 whether or not the underlying *1146 contractual fee provision was unilateral or bilateral. Moreover, many of the background materials pertaining to Senate Bill No. 1028 referred to an article in the State Bar Journal in July of 1980, which offered examples of factual situations in which unjust results could be reached under the previous, restrictive view of section 1717. The common characteristic of the examples cited in the article was that a party might be forced to bear the burden of attorney's fees despite a decision of the court which was essentially in favor of that party. No support was suggested in the materials accompanying the proposed amendment for the contention that section 1717 was limited in its application to unilateral fee provisions. (See Sen. Com. on Judiciary, analysis of Sen. Bill No. 1028 (1981-1982) Reg. Sess.; Sen. Com. on Judiciary, legis. bill file on Sen. Bill No. 1028 (1981-1982 Reg. Sess.); Sen. Democratic Caucus, 3d reading analysis of Sen. Bill No. 1028 (1981-1982 Reg. Sess.); Sen. Republican Caucus, 3d reading analysis of Sen. Bill No. 1028 (1981-1982 Reg. Sess.).)
The resulting language of the 1981 amendment plainly applies to bilateral fee provisions.
Prior to the 1981 amendment, the first paragraph of section 1717 read: "In any action on a contract, where such contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs...." (Added by Stats. 1968, ch. 266, § 1, p. 578.)
After the 1981 amendment, the section read: "(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the prevailing party, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs...." (Stats. 1981, ch. 888, § 1 p. 3399, italics added.)
The addition of the disjunctive "or to the prevailing party" can only be read to change the meaning of the section to include bilateral fee provisions. A fee provision which does not specify a particular party is by definition a bilateral provision. This is obvious when the section is read with the first disjunct removed as follows: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of that contract, shall be awarded ... to the prevailing party, then the party who is determined to be the prevailing party ... shall be entitled to reasonable attorney's fees in addition to costs...." (Italics added.)
*1147 Such a provision in a contract which "specifically provides" that fees and costs are to be awarded "to the prevailing party," without specifying one particular party, can only be regarded as bilateral. Accordingly, the 1981 amendment to section 1717 expressly made the section apply to bilateral fee agreements.
Section 1717 was further broadened in 1983 by Senate Bill No. 886 (1983-1984 Reg. Sess.). The impact of the 1983 amendment is described in the Legislative Council's Digest printed on the bill as follows in pertinent part: "Under existing law where a contract specifically provides that attorney's fees and costs shall be awarded to the prevailing party in an action to enforce the contract, it has been interpreted by the courts that the awarding of attorney's fees and costs shall be limited to an action based upon those provisions of the contract which specifically provide for the award of such fees and costs."
Thus, the express purpose of Senate Bill No. 886 was to overturn the appellate opinion in Sciarrotta v. Teaford Custom Remodeling, Inc. (1980) 110 Cal. App.3d 444 [167 Cal. Rptr. 889] (Sciarrotta). In Sciarrotta, a property owner and a contractor entered into a building contract providing for attorney's fees to be awarded in any suit to recover the "contract price." Subsequently, the owner brought an action for breach of the contractor's agreement to construct the house in a "`good and workmanlike manner.'" (Id. at p. 446.) The plaintiff prevailed and sought attorney's fees under section 1717 on the basis that the unilateral provision for attorney's fees in the contract was transformed by section 1717 into a reciprocal one. However, the appellate court rejected this claim and held the parties could limit the forms of action to which attorney's fee might be applicable and section 1717 extended only to those types of actions provided for in the contract. In its opinion, the Sciarrotta court wrote: "[n]either accepted rules of contract interpretation nor policy grounds dictate that section 1717 should be used as a vehicle to transform this limited right into an unbounded right that could not have been reasonably contemplated or intended by the parties at the time of contracting." (Sciarrotta, supra, 110 Cal. App.3d at p. 452.)
By rejecting Sciarrotta, the Legislature further demonstrated its resolve to provide a definition of "prevailing" parties under section 1717 as those who actually prevail by obtaining "a greater relief." The analysis of the proposed amendment by the Senate Judiciary Committee, at page 3, under the heading "Need for Legislation" states the following: "According to the author, this bill would put both parties to a contract on equal footing. `The sly operators will no longer be able to get away with blocking ... clients from collecting attorney's fees on cases [the latter] won.'" (Sen. Judiciary Com., analysis of Sen. Bill No. 886 (1983-1984 Reg. Sess.) p. 3.) Thus, the continuing theme *1148 of the Legislature's discussion of section 1717 has been the avoidance of narrowly defined procedures, which have been seen as favoring the dominant party, in favor of an equitable consideration of who should fairly be regarded as the winner.
Throughout the course of the amendments to section 1717, the cases have suggested, and often presumed, an equitable application beyond mere reciprocity. We have found no case refusing to apply section 1717 where the operative agreement authorized attorney's fees to "the prevailing party." Even so, no opinion has expressly defined the expansive equitable discretion permitted by the 1981 amendment to section 1717. However, several appellate courts, including the Supreme Court, have assumed the application of section 1717 has been broadened to include all contract actions which include provisions for attorney's fees.
In Honey Baked Hams, Inc. v. Dickens (1995) 37 Cal. App.4th 421, 428-429 [43 Cal. Rptr.2d 595], the court did not apply section 1717 because the statute had "no direct application," but suggested by its discussion of the Supreme Court's broader holding in International Industries, Inc. v. Olen (1978) 21 Cal.3d 218 [145 Cal. Rptr. 691, 577 P.2d 1031] (Olen) that there is an implicit substantive basis in policy for attorney's fees to be founded in section 1717. (See also Jue v. Patton (1995) 33 Cal. App.4th 456 [39 Cal. Rptr.2d 364].) In Xuereb, supra, 3 Cal. App.4th 1338 (pertaining to actions sounding in both tort and contract) the court stated: "... section 1717 would independently bar an award of attorney fees in this case because the causes of action argued at trial sounded in tort rather than in contract." (Xuereb, supra, at p. 1342, italics added; see also Adam v. DeCharon (1995) 31 Cal. App.4th 708, 712 [37 Cal. Rptr.2d 195]; Lerner v. Ward, supra, 13 Cal. App.4th at p. 160; Hsu, supra, 9 Cal.4th 863; Jacobson v. Simmons Real Estate (1994) 23 Cal. App.4th 1285 [28 Cal. Rptr.2d 699].)
In Pirkig v. Dennis (1989) 215 Cal. App.3d 1560 [264 Cal. Rptr. 494], the appellant contended neither section 1032 nor section 1717 could support an award of fees. The court focused on the word "included" in section 1032 to show net monetary recovery is not the only instance in which a litigant may be declared the prevailing party, and went on to find no different result under section 1717 (Pirkig v. Dennis, supra, at p. 1568). In Syverson v. Heitmann (1985) 171 Cal. App.3d 106 [214 Cal. Rptr. 581], the court awarded attorney's fees under section 1032, even though judgment was for zero damages. (See also Dorman v. DWLC Corp. (1995) 35 Cal. App.4th 1808 [42 Cal. Rptr.2d 459]; Ferraro v. Southern Cal. Gas Co. (1980) 102 Cal. App.3d 33 [162 Cal. Rptr. 238].) Thus, cases proceeding under 1032 as well as under section 1717 have rejected "exalt[ing] form over substance" and have awarded fees and costs even to a party receiving a judgment of zero *1149 damages. (See Syverson v. Heitmann, supra, 171 Cal. App.3d at p. 113; Ferraro v. Southern Cal. Gas Co., supra, 102 Cal. App.3d at p. 52.)
The Supreme Court applied section 1717 in precisely this fashion in Hsu, supra, 9 Cal.4th at page 877, discussed below. (2) Accordingly, we hold that section 1717 permits fees and costs to be awarded in contract actions where the contract provides for an award to the prevailing party, as well as in cases where the contract purports to permit fees only to a specified party.

C. Applicability of section 1717 to fees awarded as "costs"

Much of the historical confusion over the application of section 1717 has concerned whether fees should be specially pleaded or later sought as costs under section 1032. In this context, many authorities correctly presumed the general applicability of section 1717 and consistently suggested section 1717 applies not only to contractual provisions granting the right to attorney's fees to only one party, but also to those contracts which by their own terms create reciprocal rights. (T.E.D., supra, 38 Cal. App.3d at p. 63; Beneficial Standard, supra, 67 Cal. App.3d at p. 231; M.C. & D. Capital Corp. v. Gilmaker (1988) 204 Cal. App.3d 671, 676-677 [251 Cal. Rptr. 178].) The foregoing cases generally concerned whether attorney's fees authorized by contract were recoverable only as costs or must have been pleaded as special damages. In 1986, the Legislature responded to end the debate over whether attorney's fees were required to be specially pleaded, by amending Code of Civil Procedure section 1033.5, effective in 1987. This amendment to the cost-bill statute provided that "costs" included attorney's fees authorized by contract. (Code Civ. Proc., § 1033.5, subd. (a)(10)(A); see Bankes v. Lucas (1992) 9 Cal. App.4th 365, 371 [11 Cal. Rptr.2d 723].)
Unfortunately, this amendment, combined with the failure of any court to expressly state that section 1717 now applies to bilateral fee provisions, appears to have perpetuated the misreading of section 1717 as merely imposing reciprocity.
Before Code of Civil Procedure section 1032.5 was enacted and became effective in 1987, attorney's fees authorized by contract could only be awarded after pleading and proof. Attorneys, unaware that "attorneys' fees which are based on contract rather than on statute cannot be taxed as costs under section 1021 ... [and] must be alleged and demanded in the complaint ..." (T.E.D., supra, 38 Cal. App.3d at p. 61) often neglected to plead them. The appellate courts in the foregoing cases often looked to Civil Code section 1717 as the alternative statutory basis for contractually authorized fees, and thereby eliminated the pleading requirement. Section 1717 was *1150 thus applied not only to fill this particular gap in the statutes regarding recovery of costs but also in cases where the contracts expressly intended all parties to receive the benefit of the fee provision. This use of section 1717 was not only beyond the original scope of the statute but also an appropriate, if not always fully informed, effort to award fees to the more deserving party, the one obtaining "a greater relief."
The addition of Code of Civil Procedure section 1033.5 did not, in any way, operate to limit the recovery of fees under section 1717 to unilateral fee provisions. The Legislature obviously knew of the 1981 amendment permitting section 1717 to apply to reciprocal fee provisions and yet limited Code of Civil Procedure section 1033.5 to resolution of the confusion over whether attorney's fees must be claimed as costs or treated as damages. The amendment was "remedial," intended only to clarify the procedural method for claiming attorney's fees as costs (Bankes v. Lucas, supra, 9 Cal. App.4th at p. 370, fn. 3).
The Legislature expressly set forth this intent in section 2 of the act to amend Code of Civil Procedure section 1033.5: "`The Legislature finds and declares that there is great uncertainty as to the procedure to be followed in awarding attorney's fees where entitlement thereto is provided by contract to the prevailing party. It is the intent of the Legislature in enacting this act to confirm that these attorney's fees are costs which are to be awarded only upon noticed motion, except where the parties stipulate otherwise or judgment is entered by default.'" (Bankes v. Lucas, supra, 9 Cal. App.4th at p. 371, quoting Stats. 1990, ch. 804, § 2, p. 3552.) The legislative history of the amendment includes no comment on the prior expansion of section 1717 in its discussion of the cases giving rise to the controversy which conceived the amendment of Code of Civil Procedure section 1033.5.
By avoiding any constriction of the widely presumed equitable application of section 1717, while responding to cases such as T.E.D., supra, 38 Cal. App.3d 59, Beneficial Standard, supra, 67 Cal. App.3d 227, and M.C. & D. Capital Corp. v. Gilmaker, supra, 204 Cal. App.3d 671, the Legislature intentionally left open the door which it had already opened to permit application of section 1717 to actions involving reciprocal contract provisions for attorney's fees. This intent is further expressed by the parallel provisions of section 1032, also enacted in 1986, and discussed below, which were contemporaneously drafted to allow for broad discretion in the award of fees in "situations other than as specified." (§ 1032, subd. (a)(4).)

D. The expansion of the equitable ambit of section 1717

(3) The history of section 1717, as set forth above, consistently adheres to the theme of equity in the award of fees and demonstrates legislative *1151 intent to expand the original ambit of the statute by the addition of provisions allowing the court to determine the prevailing party as well as the reasonableness of the fees to be awarded. Because the statute allows such discretion, it must be presumed the trial court has also been empowered to identify the party obtaining "a greater relief" by examining the results of the action in relative terms: the general term "greater" includes "[l]arger in size than others of the same kind" as well as "principal" and "[s]uperior in quality." (American Heritage Dict. (3d ed. 1992) p. 792.)
As stated by the Supreme Court in Trope v. Katz, supra, 11 Cal.4th at page 289, "... the legislative purpose underlying section 1717 ... is to ensure that contractual attorney fee provisions are enforced evenhandedly." The simplest definition of evenhanded has always been "equitable" (Random House Unabridged Dict. (2d ed. 1993) p. 671) and "[d]ealing equitably with all." (American Heritage Dict. (2d college ed. 1985) p. 470). Resort to the dictionary is instructive, but hardly necessary, because the identification of the party obtaining "a greater relief" itself requires an immediate assessment more equitable in nature than the checklist supplied by section 1032.
The sort of relativist inquiry required to determine which among several aspects of relief may predominate certainly suggests more than a simple mathematical calculation of which party recovered more money. The Legislature's use of the more general term "greater relief" and the term's persistence in the face of various amendments, even while section 1032, subdivision (a)(4) was enacted to add the threshold reference to "net monetary recovery" to the Code of Civil Procedure, makes it obvious the original purpose of the section no longer constrains its application.
When deciding who prevailed under section 1717, "`... equitable considerations must prevail over both the bargaining power of the parties and the technical rules of contractual construction.'" (Bank of Idaho v. Pine Avenue Associates (1982) 137 Cal. App.3d 5, 17 [186 Cal. Rptr. 695].) Applying this equitable principle, the court may conclude the person receiving the greater monetary judgment may not be the party recovering "greater relief" on the contract action. In National Computer Rental, Ltd. v. Bergen Brunswig Corp. (1976) 59 Cal. App.3d 58 [130 Cal. Rptr. 360] (National Computer Rental), the plaintiff received a judgment for unpaid rent and taxes but was not the prevailing party pursuant to section 1717. Since the "crux" of the case involved a dispute over a termination fee in a computer equipment lease and the defendant prevailed on that issue, the court awarded attorney's fees to the defendant notwithstanding the plaintiff's net monetary judgment. The dissent in this case does not conflict with our position. The dissent argued plaintiff alleged unpaid rent and taxes in the complaint, *1152 successfully litigated these issues, and was, therefore, the prevailing part. (National Computer Rental, supra, 59 Cal. App.3d at p. 70 (conc. and dis. opn. of Jefferson, J.).)
Even when no party receives a net recovery, a party may prevail under section 1717 (Pirkig v. Dennis, supra, 215 Cal. App.3d 1560). In Pirkig, plaintiffs settled with every defendant except one prior to the damages phase of the trial. After trial of the damages, the court offset the awarded damages by the amount of the settlement, resulting in a judgment of zero. Even so, the court found plaintiff prevailed on the contract action and awarded plaintiff attorney's fees which the defendant argued could not be supported by either section 1032 or section 1717. The court found either section could support the award.
Nevertheless, the argument has continued not only over whether section 1717 applies only to contracts authorizing fees to one party and not the other, but also over the court's power under section 1717 to disregard a nominal judgment in favor of a party whose claims were actually defeated. In the case before us, even though he recovered far less of the amount in controversy, the appellant contends his "net recovery" of a relatively small judgment entitles him to attorney's fees as a matter of right. This contention swims against the prevailing tide of authorities which have assumed section 1717's vesting of broad equitable discretion in the trial court. The contention also ignores the express provision of section 1717 allowing the court to find that no party prevailed.
In National Computer Rental, supra, 59 Cal. App.3d 58, 70-71, the court held the defendant was the prevailing party and entitled to attorney's fees under section 1717 even though plaintiff recovered a nominal judgment. Defendant had admitted liability on the first two causes of action on which the plaintiff prevailed, but controverted and successfully defeated the third cause of action. The court concluded the defendant effectively prevailed on the only issue litigated at trial, even though the plaintiff obtained a money judgment. (See also Lewis v. Alpha Beta Co. (1983) 141 Cal. App.3d 29 [189 Cal. Rptr. 840].)
In Olen, supra, 21 Cal.3d at page 223, the Supreme Court considered whether to adopt a rule that would permit a defendant to automatically recover fees when a plaintiff attempted to avoid liability for fees by pretrial dismissal. Reasoning it was faced with "a Hobson's choice of either (1) adopting an automatic right to attorney fees, thereby encouraging the maintenance of pointless litigation and violating the equitable principles which should govern attorney fee clauses, (2) providing for application of equitable *1153 considerations, requiring use of scarce judicial resources for trial of the merits of dismissed actions, or (3) continuing the former rule, denying attorney fees in spite of agreement...." (Id. at 225.) The court concluded: "We are satisfied that concern for the efficient and equitable administration of justice requires that the parties in pretrial dismissal cases be left to bear their own attorney fees, whether [the] claim is asserted on the basis of the contract or section 1717's reciprocal right." (Ibid., italics added.) The Supreme Court also cited National Computer Rental with approval and referred to other cases which "have likewise recognized that the contractual provisions for attorney fees will not be inflexibly enforced and that the form of the judgment is not necessarily controlling, but must give way to equitable considerations. [Citations.]" (Id. at p. 224.) Subsequently, in 1981, the Legislature added subdivision (b)(2) to section 1717 specifically barring an award of fees after a voluntary pretrial dismissal.
In reaching its decision the Supreme Court thus overrode the contractual right to fees, which it acknowledged was extended by section 1717 to both sides, by stating the court's equitable power to deny fees is coextensive with the discretion to award or to deny fees under section 1717. This recognizes section 1717 is more than a simple provision for reciprocity and suggests that such inherent equitable power could as easily be used to award fees in a case such as the one before us, as it could be to deny them in the case of a pretrial dismissal under the former section 1717.
The Supreme Court summarized the historical purpose of section 1717 as follows: "Enactment of section 1717 commands that equitable considerations must rise over formal ones. Building a reciprocal right to attorney fees into contracts, and prohibiting its waiver, the section reflects legislative intent that equitable considerations must prevail over both the bargaining power of the parties and the technical rules of contractual construction." (Olen, supra, 21 Cal.3d at p. 224.)
In keeping with this sentiment, but disagreeing with the result (which was to prohibit recovery of costs by a party as to whom the action was dismissed prior to trial) Justices Mosk, Jefferson and Tobriner dissented. Justice Mosk pointing out that "[i]n view of the consistent references to statutory and contractual attorney's fees as an element of costs, we should construe section 1717 as providing for recovery of such attorney's fees whenever other costs are properly recoverable." (Olen, supra, 21 Cal.3d at p. 226 (dis. opn. of Mosk, J.) italics added.)
Justice Jefferson found "no magic in language used by the majority  sound public policy and equitable considerations. Both of these concepts, like beauty, have different meanings, dependent upon the eyes and ideas of *1154 the beholder." (Olen, supra, 21 Cal.3d at p. 229 (dis. opn. of Jefferson, J.).) He went on to suggest that equitable considerations and public policy would, contrary to the majority's opinion, support an award of fees under the facts of the case. (Id. at pp. 229-230.) Justice Tobriner concurred in both dissents. (See id. at p. 230; id. at p. 226 (dis. opn. of Mosk, J.).)
The language of the majority opinion, as well as the dissents, in Olen, supra, 21 Cal.3d 218, make it obvious there is more to section 1717 than a merely mechanical determination of the form of a particular judgment. In different ways, each of the opinions acknowledged the equitable nature of the statute and presumed flexibility in its application.
The Supreme Court reiterated this view in Hsu, supra, 9 Cal.4th at page 877. The court applied section 1717 and concluded, "[w]e agree that in determining litigation success, courts should respect substance rather than form, and to this extent should be guided by `equitable considerations.' For example, a party who is denied direct relief on a claim may nonetheless be found to be a prevailing party if it is clear that the party has otherwise achieved its main litigation objective. [Citations.]"
In Hsu, the trial court determined no party prevailed, thus denying fees to the appellant. The Supreme Court reversed on the grounds the results of the litigation were not "mixed" but rather the appellants had achieved "`a simple, unqualified win.'" (Hsu, supra, 9 Cal.4th at p. 876.) Under the facts of Hsu the only issue was whether the trial court had discretion to deny fees to the only parties who recovered anything in the contract action by concluding no party prevailed; it was an "either or" situation. Thus, the court did not directly consider the situation where a party "prevailed" by recovery of substantially less than what was sought, and less of the funds at issue than the opposing party.
The Supreme Court in Hsu (9 Cal.4th at p. 876) answers the question posed in the instant case: "[W]e hold that in deciding whether there is a `party prevailing on the contract,' the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. The prevailing party determination is to be made only upon final resolution of the contract claims and only by `a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.' [Citation.]"
We conclude the party recovering "greater relief in the action on the contract" under section 1717, subdivision (b)(1) does not necessarily mean the party receiving the greater monetary judgment. In the event one party *1155 received earlier payments, settlements, insurance proceeds or other recovery, the court has discretion to determine whether the party required to pay a nominal net judgment is nevertheless the prevailing party entitled to attorney's fees pursuant to section 1717.

E. Harmonizing the attorney's fees statutes

The result would not be different under Code of Civil Procedure section 1032. Even under section 1032, the court is not constrained to award attorney's fees to the party with the greatest net monetary recovery. While Civil Code section 1717 does not expressly require preliminary determinations of "net monetary recovery" to be made, section 1032 itself provides, in subdivisions (a)(4) its own broad provision for equitable relief where net monetary recovery may not be the best measure of who prevailed: "When any party recovers other than monetary relief and in situations other than as specified, the `prevailing party' shall be determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed may apportion costs...." (§ 1032, subd. (b), italics added.)
The use of "when" in this context implies two different circumstances: (1) when other than money is recovered; and (2) in situations other than as specified. Since the preceding portion of section 1032 refers only to monetary recovery, and to terminations without recovery, it would be unnecessary to refer to "other situations" if money were to be the only measure of success. Moreover, section 1032, subdivision (a)(4) states the "`[p]revailing party' includes the party with a net monetary recovery" (italics added) thus implying "other situations" without specific limitation. Nothing in the statute limits the court's inquiry solely to net monetary recovery; to do so would be to ignore, among others, the problems presented by contract-derived claims against multiple parties and net recoveries which were actually Pyrrhic victories.
Obviously this inquiry is fact intensive and therefore requires us to give considerable deference to the fully informed determinations of the trial court. While the trial court cannot arbitrarily deny fees to a less than sympathetic party, it remains free to consider all factors which may reasonably be considered to indicate success in the litigation. We agree the court may not abuse its discretion as in Deane Gardenhome Assn. v. Denktas (1993) 13 Cal. App.4th 1394, 1398-1399 [16 Cal. Rptr.2d 816], where the appellant was clearly the prevailing party, but the trial court refused to issue attorney's fees because of the frustration of having to try a case which it felt should have been handled in small claims court. And we also note that failure to succeed on all but one of several "shotgun" causes of action has *1156 been held insufficient to deny a party fees and costs. (Michell v. Olick (1996) 49 Cal. App.4th 1194, 1199 [57 Cal. Rptr.2d 227].) However, where there is evidence of other success, such as in this case by collection of a portion of the funds at issue, whether by settlement or through a collateral action, the court is entitled to take such recovery into account when calculating which side prevailed. This should be true under Civil Code section 1717 as well as under Code of Civil Procedure section 1032.
After the introductory limitation "unless the context clearly requires otherwise," Code of Civil Procedure section 1032, subdivision (a) initially provides four objective guidelines which may be considered within the discretion of the court before finding "situations other than as specified" (id. subd. (a)(4)) which would permit an award of fees. Civil Code section 1717's approach is more subjective, but it is not inconsistent. An analysis under section 1717's equitable purview would almost certainly include consideration of the factors enumerated by section 1032; and the trial court's rejection of a strong showing of any particular factor, such as a sizable net monetary recovery, would risk abuse of discretion under section 1717 just as it would under "the other than as specified" portion of section 1032. The statutes inform and reinforce one another.
Why then are there two statutes which permit the award of fees and costs? Leaving aside the historical vagaries of the legislative process, the most obvious reason is that the two sections are not identical in their language and therefore differ in application. In construing a statute, the court's objective is to ascertain and effectuate legislative intent. (Kimmel v. Goland (1990) 51 Cal.3d 202, 208 [271 Cal. Rptr. 191, 793 P.2d 524].) To determine legislative intent, the court begins with the words of the statute because they generally provide the most reliable indicator of the intent of the Legislature. (Burden v. Snowden (1992) 2 Cal.4th 556, 562 [7 Cal. Rptr.2d 531, 828 P.2d 672].)
The most obvious difference between the statutes is section 1717's option of finding no party prevailed in the action. In Foothill Properties v. Lyon/Copley Corona Associates (1996) 46 Cal. App.4th 1542 [54 Cal. Rptr.2d 488], the parties agreed the option agreement provided for attorney's fees to the prevailing party in the event of litigation. The court noted section 1717 speaks directly of contract provisions for attorney's fees and costs and provides that the prevailing party, in other words, the party who recovered greater relief on contract issues, is entitled to attorney's fees. The court also emphasized the discretion authorized by section 1717 for the court to determine no party prevailed. (§ 1717, subd. (b)(1).) Compare section 1032, which defines "prevailing party" as a party with a net monetary recovery, and also as a defendant who obtains a dismissal or avoids all liability. The *1157 court also noted, as we do, that under section 1032 "... in all situations not specified, the court has discretion to determine who is the prevailing party." (46 Cal. App.4th at p. 1553.)
The court in McLarand, Vasquez & Partners, Inc. v. Downey Savings & Loan Assn., supra, 231 Cal. App.3d at page 1456, was faced with a situation where both sides claimed attorney's fees as an item of section 1032 costs and held: "We emphatically reject the contention that the prevailing party for the award of costs under section 1032 is necessarily the prevailing party for the award of attorneys' fees. Civil Code section 1717 declares the party recovering a greater relief in the action on the contract is the prevailing party. But it further provides the trial court may `determine that there is no party prevailing on the contract for purposes of [section 1717].' [Citation.]" (Italics omitted.)
We need not consider whether one party can be the prevailing party for purposes of costs under Code of Civil Procedure section 1032 while another is determined to have prevailed for purposes of awarding fees on a contract claim under Civil Code section 1717, although that result is one of the permutations suggested by the differences between the statutes. The question here is the extent of the discretion available under each statute and whether one is to be preferred in its application to contract claims.
(4) We think the latter question was correctly answered by the court in McLarand, Vasquez & Partners, Inc. v. Downey Savings & Loan Assn., supra, 231 Cal. App.3d at page 1456 when it said: Section 1717 is the applicable statute when determining whether and how attorney's fees should be awarded under a contract. It is the statute that expressly deals with attorney's fees under a contract, and to apply section 1032 in such cases would obviate section 1717. (See Levine v. Pollack (1995) 37 Cal. App.4th 129, 138 [43 Cal. Rptr.2d 491] ["`A statute must be construed in the context of the entire statutory scheme of which it is a part, in order to achieve harmony among the parts. [Citation.] Also to be considered is the maxim that "`... statutes should be interpreted in such a way as to make them consistent with each other, rather than obviate one another.'" [Citation.]' [Citation.] Moreover, a statute must be construed `"`in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible'" [Citation.]' [Citations.]"].)
We also conclude the only practical difference in the discretion permitted under Code of Civil Procedure section 1032's guidelines is found in the lower initial threshold provided by Civil Code section 1717, which does not *1158 require the court to begin by determining whether there has been a net monetary recovery, dismissal or stalemate. Both statutes reserve to the court the final determination of who prevailed. The impact of section 1032 may be seen to prioritize the inquiry in order to quickly allocate the costs attendant to simple money judgments and pretrial dismissals, which probably represent the majority of cases, while arming the court to guard against the inequity of fees being collected by a party who was, for all intents and purposes, the loser. The court cannot ignore the criteria described by section 1032; but where section 1032 is inapplicable or where these criteria are found ill-suited, the court should begin its inquiry in any contract action with the provisions of section 1717 and be guided in the proper exercise of its discretion by the equitable principles fundamental to that section.
Civil Code section 1717's definition of prevailing party depends upon an equitable determination of which party obtained "a greater relief in the action" (id. subd. (b)(1)) and permits the court to find no party prevailed. Code of Civil Procedure section 1032 requires a prevailing party to be identified but also allows the court, in its discretion, to determine how the section may apply and, even in those "situations other than as specified" (id. subd. (a)(4)) to fix the amount of costs to be received or apportioned between the parties. Thus, section 1032 does not supplant or conflict with section 1717, but rather provides complementary discretion for the award of statutory costs, including fees where they may properly be considered as costs. The historical context of the various statutes and amendments establishes section 1717 as the fundamental statute to be applied to fees and costs claimed under a contract. Section 1717 was properly applied here.

II. No Abuse of Discretion in Declaring Baccaglio the Prevailing Party

(1b) We will not disturb the trial court's determination of the prevailing party absent a clear abuse of discretion. The trial court "`"is given wide discretion in determining which party has prevailed on its cause(s) of action...."' [Citation.]" (Nasser v. Superior Court supra, 156 Cal. App.3d at p. 59.)
Sears skirts any discussion of the court's finding against him in the liability phase of the trial. In an attempt to avoid that issue, he states that he proposed three "theories" of recovery, and succeeded on his "theory" of overpayment to Baccaglio. Later, he characterizes the entire case as both sides simply asking for monetary relief "and nothing more." This depiction of the lawsuit does not correspond with either the record or pleadings. Moreover, section 1717 does not refer to the "theory of recovery," but specifies the party prevailing recovers on the contract action. In the liability *1159 phase of the lawsuit the court found Sears did not prevail on his two theories for disavowing the guaranty. Sears lost his contract action.
Sears also attempts to skirt the issue of his liability under the contract by claiming the court awarded Baccaglio attorney's fees under Civil Code section 1717 because it mistakenly believed Baccaglio held the $112,000 as a deposit in an escrow account. As Sears acknowledges, the court learned about this mistake and determined it had no impact on its decision. Further, Sears never explains how the manner in which Baccaglio held the money had any bearing on the court's ruling. Contrary to Sears's assertion, the court opined "the whole issue turned around the effectiveness of the contract," and never mentioned another determinative factor.
The complaint and record demonstrate enforcement of the guaranty was the pivotal issue. Sears received money not because the court found Baccaglio liable for breach of contract. Instead, the court ordered Baccaglio to return a portion of Sears's payment because of the fortuitous circumstances of Baccaglio's collecting from Tonko's bankruptcy estate in March 1994 and mitigating the damages by re-leasing a portion of the building.
The court carefully considered its decision regarding the attorney's fees and explained why it rejected Sears's argument: "I cannot and do not agree with Sears' prevailing party argument because the whole case has revolved around the effectiveness of the guaranty. If the guaranty was ineffective Baccaglio would have had to return all of the $112,000; if, on the other hand, it was effective  as I have found it to be  Baccaglio had to return only that part of the whole which did not reflect his damages. In short the whole thrust of this Court's decision is to give effect to the guaranty (which was hotly disputed) and award Baccaglio the damages to which he was entitled under that contract. By no stretch of the imagination can Sears claim that he was in fact the prevailing party because, having lost on his principal claim that the contract was ineffective, he recovered more of the $112,000 than Baccaglio."
Given Sears's liability on the contract, we cannot say the trial court abused its discretion by (1) finding Baccaglio "received greater relief in the action on the contract" and (2) awarding him attorney's fees pursuant to Civil Code section 1717.

III. No Error in Setting the Date for Interest to Begin[*]
.... .... .... .... .... .... .... .

*1160 DISPOSITION
We affirm the judgment, and Baccaglio is awarded costs.
Haerle, J., concurred.
KLINE, P.J., Concurring and Dissenting.
I agree Martin H. Baccaglio was properly determined to be the prevailing party and awarded attorney fees. As the majority explains, the award is justified under Code of Civil Procedure section 1032 (section 1032). The majority's painful attempt to also justify the award on the basis of Civil Code section 1717 (section 1717) is not only wrong, and destined to exacerbate the confusion that already exists in this area of the law, but entirely gratuitous.
The "prevailing party" language of Civil Code 1717 was intended to apply and should only be applied to unilateral contractual attorney fee provisions. Since the contract in this case contains a reciprocal fee provision, the statute has no application.

I.
Significantly, section 1717 does not appear in the chapter of the Code Civil Procedure devoted to attorney fees generally (Code Civ. Proc., ch. 6, § 1021 et seq.), but in a portion of the Civil Code entitled "Obligations Imposed by Law," the other provisions of which have nothing to do with attorney fees. Section 1717, which creates a substantive, not a procedural right, was only intended to rectify the inequitable situation in which a contract of adhesion authorizes fees only for the party that drafted the contract. As stated in Coast Bank v. Holmes (1971) 19 Cal. App.3d 581, 597, footnote 3 [97 Cal. Rptr. 30], "Civil Code section 1717, is part of an overall legislative policy designed to enable consumers and others who may be in a disadvantageous contractual bargaining position to protect their rights through the judicial process by permitting recovery of attorney's fees incurred in litigation in the event they prevail." The heart of the statute is the provision that the prevailing party shall be entitled to reasonable attorney fees "whether he or she is the party specified in the contract or not." (Italics added.) As appellate courts have reiterated on numerous occasions, even after the 1981 amendment of the statute, section 1717's "only effect is to make an otherwise unilateral right to attorney fees reciprocally binding upon all parties to actions to enforce the contract." (Xuereb v. Marcus & Millichap, Inc. (1992) 3 Cal. App.4th 1338, 1342 [5 Cal. Rptr.2d 154]; Honey Baked Hams, Inc. v. Dickens (1995) 37 Cal. App.4th 421, 426 [43 Cal. Rptr.2d 595].)
*1161 The limited purpose of section 1717 is explained in the most authoritative treatise as follows: "An attorneys' fees provision is usually included by the party that drafts the contract, e.g., the installment seller, the mortgagee, the lessor or the payee of a note. It may provide for an award to either party to the contract ... but it is sometimes designed for the sole benefit of the party with the greater bargaining power who offers a completed draft for the other party's acceptance.... Giving full effect to the contract might mean that a buyer, mortgagor, lessee or maker of a note, though successful in the litigation, would not be entitled to an award of fees. [¶] The 1968 Legislature prohibited this practice by enacting C.C. 1717. ..." (7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 162, pp. 683-684, italics added.)
The equitable issue upon which the majority focuses, which relates to the definition of "prevailing party," is not the one the Legislature was concerned about when it enacted section 1717. The problem the statute addresses is not who prevailed but whether a party who unquestionably prevailed may nevertheless be denied fees on the basis of a one-sided attorney fee provision. The majority attributes to the drafters of section 1717 an intention to vest courts with broad equitable authority to cure a very different problem. In so doing, the majority has in effect converted section 1717 into a roving judicial authorization to do almost anything a judge desires with respect to awarding or denying attorney fees if the determination can be characterized as "equitable."
Moreover, as applied to the determination of who is a "prevailing party," the majority's analysis renders section 1032 meaningless, despite the fact that the definition of "prevailing party" contained in section 1032 is clearly addressed to attorney fees generally. While a specific statute ordinarily takes precedence over a general statute where the two are in conflict, that is true only with respect to matters within the ambit of the specific statute; and, as explained, the more specific statute here (section 1717) cannot be deemed to apply to any case not involving a unilateral fee provision without ignoring the obvious and very limited legislative purpose. As a general rule of statutory construction, courts cannot create exceptions to rules of general application in the absence of an explicit legislative intention to do so. (Stockton Theatres, Inc. v. Palermo (1956) 47 Cal.2d 469, 476 [304 P.2d 7].)
The reason Civil Code section 1717 does not contain any expression of intent to supersede the definition of "prevailing party" contained in section 1032 is that Code of Civil Procedure section 1032 was enacted in 1986, after enactment of section 1717. It is elemental that if new provisions cannot be reconciled with earlier provisions of an entire scheme, the new provisions should prevail. "[W]here two statutes deal with the same subject matter, the *1162 more recent enactment prevails as the latest expression of legislative will." (2B Sutherland, Statutory Construction (5th ed. 1992) § 51.02, p. 122, fn. omitted; Stafford v. L.A. etc. Retirement Board (1954) 42 Cal.2d 795, 798 [270 P.2d 12].)
The majority's sleight of hand, which consists of the imputation to section 1717 of a legislative purpose that never existed, seems to me transparent. Thus, for example, the majority says that "the 1981 amendment plainly applies to bilateral fee provisions" (maj. opn., ante, at p. 1146) because the legislative materials accompanying the amendment do not explicitly state that it applies only to "unilateral fee provisions." (Ibid.) The absence of such a declaration provides far too slender a reed to support the majority's construct. There was no need for an explicit statement limiting application of the statute because the limitation is apparent. The curiosity is not that the legislative materials failed to state the obvious fact that the measure applied to unilateral fee provisions, which is clear on the face of the statute, but that they failed to provide any indication that it was not so limited, which the majority emphasizes. If the author of the measure had such a dramatic change in mind there certainly would have been some indication of it in the legislative history. The absence of such a statement of changed purpose is a stronger and much more useful indication of legislative intent than the absence of a statement that no change was intended, upon which the majority relies.
The majority attaches inordinate significance to the 1981 addition of the word "or" to section 1717. As the majority points out, the first paragraph of the statute originally read: "In any action on a contract, where such contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs...." (Stats. 1968, ch. 266, § 1, p. 578; italics added.) In amending section 1717 in 1981, the Legislature inserted the word "or" before the italicized phrase "the prevailing party." From this ambiguous act (which probably reflected the common understanding that a party cannot benefit from the amended statute without prevailing in the action) the majority draws the remarkable conclusion that section 1717 no longer simply creates a new right in certain parties to certain contracts, but defines existing rights in parties who never needed the right section 1717 was designed to create. The important language in the quoted provision of section 1717 is not that which the majority seizes upon but the phrase "whether he is the party specified in the contract or not." This original language, which statutorily transforms a unilateral attorney fee provision into a bilateral provision, has never been altered, and remains the key to a proper understanding of the reach of the statute.
*1163 Implicitly acknowledging that the 1981 amendment of section 1717 may not persuasively justify their expansive interpretation, my colleagues seek to buttress their position by pointing to the 1983 amendment. They do so in vain.
The 1983 amendment added the second paragraph of subdivision (a), which reads as follows: "Where a contract provides for attorney's fees, as set forth above, that provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract." The majority contends that the purpose of this new language, which was apparently designed to overrule Sciarrotta v. Teaford Custom Remodeling, Inc. (1980) 110 Cal. App.3d 444 [167 Cal. Rptr. 889], was "to provide a definition of `prevailing' parties under section 1717 as those who actually prevail by obtaining a `greater relief.'" (Maj. opn., ante, at p. 1147.) This is simply not so. The opinion in Sciarotta did not purport to define a "prevailing party," nor does the 1983 amendment. Both simply pertain to the type of contractual actions to which section 1717 applies. The majority misconstrues the legislative purpose. The legislative materials state that the amendment "would put both parties to a contract on equal footing," and prevent "sly operators" from "blocking ... clients from collecting attorneys' fees on cases [the latter] won, not by redefining the definition of a "prevailing party," but by redefining and expanding the application of section 1717 to "the entire contract" not just limited actions prescribed by the more powerful party. The 1983 amendment therefore does not, as the majority claims, illustrate any "continuing theme ... in favor of an equitable consideration of who should fairly be regarded as the winner." (Maj. opn., ante, at pp. 1147-1148.)
All of the changes that have been made to section 1717 over time have been consistent with the original "theme" of the statute, which is to protect the weaker party to the contract from the more powerful party with respect to the right to recover attorney fees. The various definitions of "prevailing party" that may be found among the statutes of this state are neutral principles that do not affect the policy of section 1717 one way or the other.
To be sure, there is confusion in the case law as to the application of section 1717. Some appellate courts, including on one occasion the Supreme Court (Hsu v. Abbara (1995) 9 Cal.4th 863 [39 Cal. Rptr.2d 824, 891 P.2d 804]) have suggested that section 1717 applies in certain situations not involving a unilateral fee provision. However, neither in Hsu v. Abbara, nor in any other case has the Supreme Court directly addressed this question.
The confusion among the Courts of Appeal originated with a brief line of cases, to which my colleagues advert, suggesting that the statute is procedural as well as substantive and that its language is so broad that it applies *1164 not only to contractual provisions granting a unilateral right to fees but as well to contracts providing reciprocal rights. (T.E.D. Bearing Co. v. Walter E. Heller & Co. (1974) 38 Cal. App.3d 59, 63 [112 Cal. Rptr. 910]; Beneficial Standard Properties, Inc. v. Scharps (1977) 67 Cal. App.3d 227, 231 [136 Cal. Rptr. 549]; and M.C. & D. Capital Corp. v. Gilmaker (1988) 204 Cal. App.3d 671, 676-677 [251 Cal. Rptr. 178].) These cases addressed the issue whether attorney fees authorized by contract are recoverable as costs or only as special damages. Prior to 1987, such fees could be awarded only upon pleading and proof. Attorneys, often unaware that attorneys fees which are based on contract rather than on statute cannot be taxed as costs under Code of Civil Procedure section 1021 and must be alleged and demanded in the complaint, often neglected to plead and prove them. Responding to this problem, courts in cases such as those just cited conveniently seized upon Civil Code section 1717 as an alternative statutory basis for contractually authorized fees, thereby eliminating the pleading requirement. This was an equitable result, because the contracts involved in those cases intended all parties to receive the benefit of the fee provision. The strained opinions in these cases do not, however, persuasively explain why the right to fees created in section 1717 should apply to parties not in need of a statutory right.
In any case, in 1986 the Legislature eliminated any confusion as to whether attorney fees are in the nature of costs or special damages by amending section 1033.5 of the Code of Civil Procedure. This amendment to the cost bill statute specifically provides that "costs" includes attorney fees authorized by contract. (Code Civ. Proc., § 1033.5, subd. (a)(10); see Bankes v. Lucas (1992) 9 Cal. App.4th 365, 371 [11 Cal. Rptr.2d 723].) Cases such as T.E.D. Bearing Co v. Walter E. Heller & Co., Beneficial Standard Properties, Inc. v. Scharps, and M.C. & D. Capital Corp., are thus no longer useful for any purpose other than to continue the confusion they unfortunately created as to the ambit of Civil Code section 1717. If anything, this superseded line of cases suggests that a just cause does not justify the perversion of section 1717, and that a legislative solution is preferable.
With respect to the definition of "prevailing party," the Legislature has provided the solution, not by amending Civil Code section 1717 but by enacting section 1032. The fact that the Legislature used the Code of Civil Procedure as its vehicle, and not the Civil Code, is instructive. It shows that if, as the majority claims, the Legislature intended to define the phrase "prevailing party" in connection with bilateral attorney fee agreements prior to the enactment of section 1032, section 1717 would not be the place it would have made such a change. The most obvious place would be provisions of the Code of Civil Procedure dealing with attorney fees generally the place it later selected when it actually made this change by enacting section 1032.
*1165 If the Legislature meant to achieve this purpose in the 1981 or 1983 amendments to Civil Code section 1717, Code of Civil Procedure section 1032 would be superfluous. Indeed, one of the strange consequences of the majority's opinion is to undermine the significance of the definition of "prevailing party" in section 1032, which most easily supports the majority's position.

II.
The erroneous judicial assumption that it is necessary to resort to Civil Code section 1717 in order to achieve an equitable definition of whether a particular party "prevailed" in the case results from the failure to look beyond the "net monetary recovery" language of Code of Civil Procedure section 1032. As the majority correctly points out, that phrase is conditioned by other language later in the statute which authorizes the denial of fees to the party who achieves a net monetary recovery "in situations other than as specified ..."  that is, in situations in which money is not the only or best measure of success. Thus it was through section 1032, not section 1717, that the Legislature vested trial courts with the discretion that was exercised in this case. The fact that the trial judge here relied on 1717 does not prevent us from affirming him on another basis. He reached the right result on the wrong statute.
As my colleagues point out, section 1032 provides that the "prevailing party" may be "as determined by the court," and may be a party other than the one achieving a net monetary recovery "in situations other than as specified"; i.e., where the circumstances are other than the four specifically spelled out in subdivision (a)(4) of section 1032. While I do not disagree with this, I think there is other language in section 1032 which more strongly supports the majority's conclusion; namely the first sentence of section 1032, which states: "(a) As used in this section, unless the context clearly requires otherwise: [¶] ... [¶] (4) `Prevailing party' includes [etc.]" The italicized phrase must be deemed, I believe, to preserve the power of the court to depart from the statutory guidelines where adherence to the guidelines would achieve an inequitable result. As Sutherland points out, "Where a definition clause [in a statute] is clear it should ordinarily control the meaning of words used in the remainder of the act because of its authoritative nature. But the courts are not bound to follow a statutory definition where obvious incongruities in the statute would otherwise be created, or where one of the major purposes of the legislation would be defeated or destroyed. Where a definition is not clear then the court should use all intrinsic and extrinsic aids available to determine the legislative intent. The presumption should be that a fair interpretation of the meaning of words as defined in the definition section should control." (1A Sutherland, Statutory Construction (5th ed. 1993) § 27.02, p. 467, fns. omitted, italics added.) It is *1166 not the purpose of section 1032 to artificially constrict the meaning of "prevailing party," but simply to identify the criteria that ordinarily come into play when determining who is the prevailing party. Where, as in our case, application of the specified criteria would have an unfair result  because the party achieving a "net monetary recovery" is not really the "prevailing party"  the purpose of the statute would be defeated if the specified criteria were the only ones that could be considered. Inclusion in the statute of the phrase "unless the context clearly requires otherwise" (as well as the phrase "a situation other than as specified") shows that the Legislature anticipated this possibility, and specifically authorized trial courts to depart from the specified criteria when it would be inequitable to adhere strictly to any particular specified criterion, such as the "net monetary recovery" test. In other words, the criteria set forth in section 1032 are merely guidelines and were never intended to rigidly constrain trial judges. In short, the inequity the majority seeks to cure by an unjustifiably broad interpretation of section 1717 can be adequately dealt with under section 1032.

III.
The majority's unnecessary reliance on section 1717, and the analysis it employs to justify that reliance, is destined to work mischief. For example, section 1717 has consistently been held not to afford recovery of fees for tort claims arising out of or related to contracts specifically providing that attorney fees incurred to enforce the contract shall be awarded. (See, e.g., Reynolds Metals Co. v. Alperson (1979) 25 Cal.3d 124, 129 [158 Cal. Rptr. 1, 599 P.2d 83]; Stout v. Turney (1978) 22 Cal.3d 718, 730 [150 Cal. Rptr. 637, 586 P.2d 1228]; Moallem v. Coldwell Banker Com. Group, Inc. (1994) 25 Cal. App.4th 1827, 1830 [31 Cal. Rptr.2d 253].) The case law allows attorney fees for tort claims only where the contractual attorney fee provision was phrased broadly enough to cover such noncontractual claims. (Xuereb v. Marcus & Millichap, Inc., supra, 3 Cal. App.4th 1338.) In all of those cases, however, the attorney fee provision was not unilateral but bilateral, and therefore not within the ambit of section 1717. The courts have refused to allow recovery of attorney fees for tort claims in cases in which the prevailing party's right to fees is predicated on the reciprocity mandated under section 1717.
For example, in Moallem v. Coldwell Banker Com. Group, Inc., supra, 25 Cal. App.4th 1827, the prevailing plaintiff's request for attorney fees under section 1717 was denied at trial because the judgment in his favor was for negligence and breach of fiduciary duty, but not for breach of contract. On appeal he relied on cases, like Xuereb v. Marcus & Millichap, Inc., supra, allowing fees for tort claims where the contract provided that attorney fees *1167 would be allowed to the prevailing party in any action "arising out of" the contract (or similar broad language). The Court of Appeal rejected the argument, pointing out that in the cases upon which the plaintiff relied, the contract provisions provided for attorney fees to whichever party prevailed, unlike the unilateral provision of the contract involved in the case. The court observed that Moallem, the successful plaintiff, "thus occupies the difficult position of arguing that the `public policy' of reciprocity of contractual attorney fee provisions, which section 1717 appears to implement, should control a noncontractual case that is specifically beyond section 1717's ambit. Although we sympathize with Moallem's position, we conclude that, just as its reach exceeds the statute's grasp, to adopt it would overreach our judicial function." (Moallem v. Coldwell Banker Com. Group, Inc., supra, 25 Cal. App.4th at p. 1831.) The same thing should be said here, and it is easier to do so because in this case, unlike Moallem, there is an independent basis upon which to reach an equitable result.
My colleagues walk where the Moallem court feared to tread, because they apply section 1717's definition of "prevailing party" to a case that is specifically beyond that statute's ambit. The majority has, in effect, conflated sections 1717 and 1032, rendering it no longer important whether the attorney fee provision at issue creates a unilateral right to fees or reciprocal rights. The rationale the majority adopts would justify not only the result they desire in this case, but other consequences they may not anticipate.
A petition for a rehearing was denied February 13, 1998, and the petition of appellant Brian F. Sears for review by the Supreme Court was denied April 22, 1998. Mosk, J., was of the opinion that the petition should be granted.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III of the majority opinion.
[*] See footnote, ante, page 1136.