[Civ. No. 27746. Fourth Dist., Div. Two. July 14, 1982.]

GEORGE W. WILLIS et al., Plaintiffs, Cross-defendants and Appellants, v.
SODA SHOPPES OF CALIFORNIA, INC., et al., Defendants, Cross-complainants and Respondents.

900

COUNSEL

Morrison & Morgan and Ralph J. Morgan for Plaintiffs, Cross-defendants and Appellants.

Stanton & Oberstein and Norman S. Oberstein for Defendants, Cross-complainants and Respondents.

OPINION

**MORRIS, P. J.**—This case comes to us on certification from the appellate department of the superior court.

The question certified is whether a lessor's consequential damages under Civil Code section 1951.2, subdivision (a) must be offset by any increase in rent obtained by a lessor upon reletting of premises following termination of the original lease.

The trial court resolved this issue in favor of the lessee-defendant, Soda Shoppes of California, Inc., allowing the setoff. We affirm.

The plaintiff-lessors, George Willis and Harriet Willis, commenced this action to recover accrued rent and consequential damages allegedly totaling over $14,000 following the abandonment by Soda Shoppes of commercial premises leased to it by plaintiffs. The defendant Soda Shoppes cross-complained for return of a $1,100 security deposit and for a declaration that they were entitled to offset against the rent and damages all sums received and to be received by plaintiffs upon the reletting of the premises.

The trial court gave judgment in favor of the lessee-defendant on the complaint, holding that all of the damages plaintiffs, the lessors, incurred due to the lessee-defendants' breach of the lease were offset by the increase in rent the lessors received by reletting the premises after the original lease was terminated. The trial court denied the lessees recovery on the cross-complaint.

The material facts are as follows: In 1976, the parties entered into a lease of the premises for a term of 10 years, plus the partial year in which the lessee initially opened the retail shop. The agreement provided for rent in the base amount of $1,100 per month plus taxes, insurance and other charges.

In November 1979, the lessee gave the lessors written notice of its intention to abandon the lease effective November 30, 1979. The lessors informed the lessee in writing of their intent to hold it to the terms of the lease. They also stated that they would attempt to relet the premises, but they did not state that the reletting would be for the account of

the lessee. They requested that the keys be returned to them, and on December 12, 1979, the lessor picked up the keys.

The premises were relet effective April 1, 1980, with the lease to expire December 31, 1985. This agreement provides for a minimum rent of $1,485 per month, and contains a provision increasing the base rent by a percentage equivalent to the yearly increase in the United States Bureau of Labor Statistics Consumer Price Index.

The lessors filed suit to recover, as damages, the unpaid rent for the months of December 1979, through March 1980, expenses for repair and cleanup, and the broker's commission for both the unused term of the Soda Shoppes lease and for negotiating the new lease.

This case was tried in the municipal court on stipulated facts. In addition to the facts contained in the above summary, the parties stipulated that if Soda Shoppes had not abandoned the lease, the minimum rent which would have been paid under the eight-year lease from December 1, 1979, to December 31, 1987, was $106,700. If the new lease is fully performed, the lessors will receive $104,674 as minimum rent under a five-year lease. However, this does not take into consideration possible future increases in the Consumer Price Index.

■ Following the trial and the subsequent appeal to the superior court, the appellate department of the superior court certified to this court as an important question of law the issue whether in an action for rent and damages arising out of a breach of a commercial lease, Civil Code section 1951.2, subdivision (a) permits the damages incurred by the lessors to be offset by the increase in rent received by the lessors upon reletting of the premises.

■ Lessors now seek to avoid the setoff problem under section 1951.2, subdivision (a) by invoking the application of the alternative remedy of Civil Code section 1951.4. Under section 1951.4, the lease continues with no retaking or reletting by the lessor. Section 1951.4 reads in pertinent part as follows: "(a) The remedy described in this section is available only if the lease provides for this remedy. [¶] (b) Even though a lessee of real property has breached his lease and abandoned the property, the lease continues in effect for so long as the lessor does not terminate the lessee's right to possession, and the lessor may enforce all his rights and remedies under the lease, including the right

to recover the rent as it becomes due under the lease, if the lease permits the lessee to do any of the following: . . . ."

Under the facts of this case, lessors are not entitled to proceed under section 1951.4. Although the remedy was authorized in the lease, the trial court found that it was not available to the lessors in this case because the lessors terminated the lessee's right to possession. The evidence was sufficient to support the trial court's finding that the lease terminated on November 30, 1979, the date of abandonment by the lessee. At no time did the lessors advise the lessee that the premises would be relet for the account of the lessee. The lessee was deprived of its possession and of its ability to relet the premises. Moreover, lessors' action in seeking to recover the broker's commission for the unused term of the Soda Shoppes' lease is inconsistent with the lessors' present contention that the lease was not terminated.

■ Our task is to determine the proper application of Civil Code section 1951.2 to the facts as stipulated and determined by the trial court.

Section 1951.2 provides in pertinent part as follows: "(a) Except as otherwise provided in Section 1951.4, if a lessee of real property breaches the lease and abandons the property before the end of the term or if his right to possession is terminated by the lessor because of a breach of the lease, the lease terminates. Upon such termination, the lessor may recover from the lessee:

"(1) The worth at the time of award of the unpaid rent which had been earned at the time of termination;

"(2) The worth at the time of award of the amount by which the unpaid rent which would have been earned after termination until the time of award exceeds the amount of such rental loss that the lessee proves could have been reasonably avoided;

"(3) Subject to subdivision (c), the worth at the time of award of the amount by which the unpaid rent for the balance of the term after the time of award exceeds the amount of such rental loss that the lessee proves could be reasonably avoided; and

"(4) *Any other amount necessary to compensate the lessor for all the detriment proximately caused by the lessee's failure to perform his ob-*

*ligations under the lease or which in the ordinary course of things would be likely to result therefrom."* (Italics added.)

Section 1951.2, subdivision (a)(4) which provides for consequential damages must be read in context. When it is, it appears clear that the legislative intent was that a lessor who has made reasonable efforts to mitigate his damages by reletting or attempting to relet the property is to be compensated for the net loss proximately caused by the lessee's breach.

This interpretation of the statute finds support in the legislative committee comment to section 1951.2. (10 West's Ann. Cal. Codes (1982 Cum. Pocket Part) p. 111.) The comment states in part as follows:

"Paragraph (4) of subdivision (a) makes clear that the measure of the lessor's recoverable damages is not limited to damages for the loss of past and future rentals. *This paragraph adopts language used in Civil Code Section 3300 and provides, in substance, that all of the other damages a person is entitled to recover for the breach of a contract may be recovered by a lessor for the breach of his lease.* For example, to the extent that he would not have had to incur such expenses had the lessee performed his obligations under the lease, the lessor is entitled to recover his reasonable expenses in retaking possession of the property, in making repairs that the lessee was obligated to make, in preparing the property for reletting, and in reletting the property. Other damages necessary to compensate the lessor for all of the detriment proximately caused by the lessee would include damages for the lessee's breach of specific covenants of the lease—for example, a promise to maintain or improve the premises or to restore the premises upon termination of the lease. Attorney's fees may be recovered only if they are recoverable under Section 1717.

"If the lessee proves that the amount of rent that could reasonably be obtained by reletting after termination exceeds the amount of rent reserved in the lease, *such excess is offset against the damages otherwise recoverable under paragraph (4) of subdivision (a)* Subject to this exception, however, the lease having been terminated, the lessee no longer has an interest in the property, and the lessor is not accountable for any excess rents obtained through reletting." (Italics added.)

The fact that the Legislature adopted the language of Civil Code section 3300, which sets forth the measure of damages for the breach of an

obligation arising from contract, is significant because the measure of damages for such breach is subject to the well established rule that a party damaged by a simple breach of contract may not recover more on the breach than the party would have received by performance. Civil Code section 3358 provides: "Except as expressly provided by statute, no person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides."

Since section 1951.2, subdivision (a)(4) adopts the language of section 3300, we conclude that the measure of damages so stated is subject to the same limitation.

Although the legislative committee comment refers to the excess rentals on reletting being offset against the consequential damages, the allowance for such excess is not in fact a setoff, but is simply a method of determining the actual damages sustained by the lessor as a result of the breach. Unless the total detriment suffered, whether by loss of rentals or consequential damages, exceeds the amount to be received under the new lease there is in fact no detriment, and hence no damages.

We conclude that the trial court could properly consider the worth at the time of the award of the amount by which the rent payable under the new lease exceeds the amount of the rental loss for the balance of the term as an offset against the consequential damages incurred by the lessor in connection with the abandonment of the premises by the lessee.

We affirm the judgment of the trial court.

Kaufman, J., and Trotter, J., concurred.

A petition for a rehearing was denied August 13, 1982, and appellants' petition for a hearing by the Supreme Court was denied September 8, 1982.