[No. B059467. Second Dist., Div. Five. Mar. 10, 1992.]

ESCROW AGENTS' FIDELITY CORPORATION et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; LINDA ABELMAN, Real Party in Interest.

**COUNSEL**

Gascou, Gemmill & Thornton, Michael G. Evans, Lewis, D'Amato, Brisbois & Bisgaard and Lauren J. Udden for Petitioners.

No appearance for Respondent.

No appearance for Real Party in Interest.

**OPINION**

**BOREN, J.**—Petitioners challenge an order of the respondent court sustaining, without leave to amend, the demurrer of real party Linda Abelman (Abelman) to the first cause of action of petitioners' complaint. In that cause of action, petitioners sought relief based on the theory of quia timet, an equitable remedy which allows an aggrieved party to obtain prejudgment relief to prevent an anticipated injury. Abelman persuaded the respondent court that quia timet was a remedy which no longer exists in the State of California, having been "taken over by, consumed in and now part of a whole statutory scheme of rights." .

Although quia timet has by and large been abandoned in favor of other legal and equitable prejudgment remedies, it is is by no means obsolete. Although rarely utilized in general practice, it is widely and effectively used in fidelity and surety bond cases. The respondent court erred, therefore, in sustaining Abelman's demurrer to petitioners' quia timet cause of action.

### FACTS AND PROCEDURAL HISTORY

Petitioner Escrow Agents' Fidelity Corporation (EAFC) is a nonprofit corporation established by the Legislature pursuant to the Escrow Law (Fin. Code, § 17000 et seq.) to act as the fidelity surety for the trust obligations of licensed escrow agents in California. ■ The purpose of EAFC is to indemnify its member agents against loss of trust obligations as a result of embezzlement, theft, or mysterious disappearance. (See 30 Cal.Jur.3d, Escrows, §§ 57-66, p. 679 et seq.) The surety coverage is underwritten by petitioner National Union Fire Insurance Company, which issued a "Blanket Crime Policy" for the benefit of EAFC and each of its member agents.

One such agent, Abelman, is alleged to have embezzled over $4 million from Citi Escrow (Citi) and a related company, 1031 Exchange (Exchange). On June 11, 1990, both of those entities filed voluntary chapter 11 petitions in bankruptcy court. On Citi's behalf, Citi's trustee in bankruptcy made a claim with petitioners in excess of $4 million, a claim which petitioners are statutorily obligated to pay. (Fin. Code, §§ 17330, 17314.)

On November 21, 1990, petitioners filed the underlying superior court action against Abelman, to which Abelman demurred. On May 8, 1991, the

respondent court sustained, without leave to amend, the demurrer to the first cause of action for equitable relief quia timet and imposition of a constructive trust.[1]

On August 5, 1991, while this petition was pending, Abelman filed a voluntary chapter 7 bankruptcy petition in the United States Bankruptcy Court in Hawaii. Oral argument in this case was continued several times so that petitioners could obtain a transfer of Abelman's bankruptcy case to California, then obtain relief from the automatic stay imposed by 11 United States Code section 362. On February 5, 1992, the United States Bankruptcy Court for the Central District of California entered its order granting petitioners' motion for relief from the automatic stay, for the limited purpose of allowing this court to rule on the petition for writ of mandate.

## DISCUSSION

■ Quia timet (literal translation, "because he fears"), is an action for equitable relief against an anticipated injury. "Bills *quia timet* are in the nature of writs known at the common law as *brevia anticipantia*, or writs of prevention, to accomplish the ends of precautionary justice. They are ordinarily applied to prevent wrongs or anticipated mischief, and not merely to redress them when done. The party asks the aid of the court because he fears some future probable injury to his rights or interests, and not because an injury has already occurred which requires compensation or other relief." (Conners, Cal. Surety & Fidelity Bond Practice (Cont.Ed. Bar 1969) § 13.13, p. 176, citing *Archbishop of S.F.* v. *Shipman* (1886) 69 Cal. 586, 589 [11 P. 343].)

Traditionally, the equitable remedy of quia timet was used in California in real property cases (and, to a lesser extent in personal property cases), "to prevent a mischief, rather than redress it." (*Martin* v. *Holm* (1925) 197 Cal.733, 746 [242 P. 718] [threatened violation of building restriction]; see also *Newport* v. *Hatton* (1924) 195 Cal. 132 [231 P. 987] ["writ of prevention" to protect remainderman's interest in real property]; *German Savings etc. Society* v. *Collins* (1904) 145 Cal.192 [78 P. 637] [quia timet action to determine claims and liabilities of parties to $2,500 drawn on forged

---

[1]The remaining causes of action of petitioners' complaint are: (2) subrogation, (3) unjust enrichment, (4) fraud and deceit, (5) negligence, (6) accounting, (7) implied indemnity, (8) and statutory reimbursement under Civil Code section 2847. The court overruled the demurrer to the seventh cause of action for indemnity. The demurrers to the remaining causes of action were sustained with leave to file a first amended complaint "within 30 days after . . . either or both of the plaintiffs pay any money to the trustee in bankruptcy of . . . Citi Escrow." Petitioners have not challenged the court's ruling with respect to any of the other causes of action.

checks]; *Benson* v. *Shotwell* (1890) 87 Cal.49 [25 P. 249] [specific performance of a contract to purchase waterfront property in San Francisco]; *McGrath* v. *Wallace* (1890) 85 Cal. 622 [24 P. 793] [action to enjoin a foreclosure sale]; *United Land Association* v. *Knight* (1890) 85 Cal. 448 [24 P. 818] [suit over title to real property]; *Archbishop of S.F.*, *supra*, 69 Cal. 586 [action to enjoin a foreclosure sale].)

Even at the time the above cases were decided, quia timet relief was used sparingly. (*Archbishop of S.F.*, *supra*, 69 Cal. at pp. 592-593) Today, it has for the most part been forsaken in favor of statutory remedies. For example, a party who wants to enjoin a foreclosure sale, prevent a nuisance, or otherwise assert a right to real property (the traditional uses for quia timet), would seek injunctive relief and make effective use of the lis pendens statutes (Code Civ. Proc., § 409 et seq.). An aggrieved creditor might avail himself of the attachment law (Code Civ. Proc., § 481.010 et seq.), provided he is fortunate enough to have a debtor with assets to attach. An individual with a claim to personal property has at his disposal the claim and delivery statutes (Code Civ. Proc., § 511.010 et seq.).

Had these statutory remedies completely replaced quia timet, however, it would have been news to the fidelity and surety bond industry, and to those judges of the Los Angeles Superior Court who have granted relief in cases similar to this one.[2] ■ " 'No principle in equity is more familiar, or more firmly established, than that a surety, *after the debt for which he is liable has become due*, without paying or being called on to pay·it, may file a bill in equity in the nature of a bill quia timet to compel the principal to exonerate him from liability by its payment, provided no rights of the creditor are prejudiced thereby.' . . . The doctrine is not premised on mere fear of loss or liability prior to an obligation's maturity. Rather, only after the obligation becomes payable, the surety, before he pays it, may maintain a suit in equity against the debtor in the nature of a bill quia timet to compel the latter to pay the debt or perform the obligation, provided the creditor could enforce payment or performance but neglects or refuses to do it." (*Fireman's Fund Ins. Co.* v. *S.E.K. Construction Co.* (10th Cir. 1971) 436 F.2d 1345, 1349, italics in original; see also *Northwestern Nat. Ins.* v. *Alberts* (S.D.N.Y. 1990) 741 F.Supp. 424, 429-430, and cases cited therein.)

Quia timet is in fact especially suited to surety cases. (See, e.g., examples cited in Conners, Cal. Surety & Fidelity Bond Practice, *supra*, pp. 177-178.)

---

[2]EAFC asked this court to take judicial notice of temporary restraining orders or injunctions which it obtained in several escrow cases. At petitioners' request, we published this opinion to provide current authority on the viability of quia timet relief. (Cal. Rules of Court, rule 976(b)(3).)

"A surety or guarantor is one who promises to answer for the debt, default, or miscarriage of another. . . ." (Civ. Code, § 2787.) A surety is obligated by law to pay the creditor of its defaulting principal immediately upon the principal's default or defalcation. (Civ. Code, § 2807). Although a surety may file an action at law to compel its principal to perform the obligation on a bond when due (Civ. Code, § 2846), the fact that it may eventually obtain a judgment against the principal is of little comfort to the surety if, in the interim, the principal has absconded with the very funds which could have been used to satisfy the bond. Quia timet allows the surety to prevent the principal from dissipating those funds if the surety knows it will be called upon to "pay the debt or perform the obligation" on the bond, suspects that the principal has some or all of the necessary funds to do so, and fears that the principal may abscond with those funds.

Abelman, without citing any specific authority to support her argument, persuaded the respondent court that quia timet was "a concept that pre-dates movable type, and has virtually no application in modern society." Petitioners have persuaded us otherwise.

### DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to vacate that portion of its order of May 8, 1991, sustaining, without leave to amend, the demurrer of defendant Linda Abelman to the first cause of action of plaintiffs' complaint, and enter a new and different order overruling the demurrer.

Turner, P. J., and Grignon, J., concurred.