Filed 4/9/14  Whyaduck Productions v. Block CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| WHYADUCK PRODUCTIONS, INC., | B245051 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SC114601) |
| v. | |
| MITCHELL W. BLOCK, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Allan J. Goodman, Judge.  Affirmed.

James G. Lewis for Defendant and Appellant.

Cook Collection Attorneys and David J. Cook for Plaintiff and Respondent.

————————————

**INTRODUCTION**

This is an appeal about nothing. Or at least it could have been about nothing, had the defendant paid what he owed on time, instead of waiting until the plaintiff filed the lawsuit. Instead, this appeal is about whether a plaintiff who recovers a judgment that was satisfied during the pendency of the action is a prevailing party for purposes of recovering costs and contractual attorneys' fees.

Defendant Mitchell W. Block appeals a judgment in favor of plaintiff Whyaduck Productions, Inc. (Whyaduck) holding him liable on a guaranty of an arbitration award Whyaduck obtained against Block's company, Direct Cinema Limited (DCL). After confirming the arbitration award against DCL, Whyaduck filed this action against Block to recover the unpaid portion of the arbitration award and the attorneys' fees and costs Whyaduck incurred trying to enforce and collect on the award. During the course of this litigation, DCL paid the remaining amount it owed on the award, $17,195.38, but Whyaduck continued to pursue its claim against Block to recover its attorneys' fees and costs. After a court trial, the trial court entered judgment awarding Whyaduck the $17,195.38 originally due on the arbitration award, deemed that amount satisfied during the pendency of the litigation, determined that Whyaduck was the prevailing party, and awarded Whyaduck $85,500 in attorneys' fees and costs. Block appeals, arguing that the trial court erred by finding him liable under the terms of the guaranty and by determining that Whyaduck was the prevailing party. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

A. *The Arbitration and the Guaranty*

In February 2002 DCL entered into an agreement to distribute two home videos produced by Whyaduck, "The Marx Brothers in a Nutshell" and "W.C. Fields Straight Up," in exchange for payment by DCL to Whyaduck of certain royalties, with distribution costs to be borne by DCL out of its share of the gross income. Block, an

2

experienced film distributor with a masters in business administration from Columbia University, is the president of DCL. Robert Weide is the principal of Whyaduck.

In 2010 the parties had a dispute over the interpretation of the provision in the distribution agreement regarding "DCL's entitlement to recoup certain costs, and the effect of such recoupment on [Whyaduck's] entitlement to royalties." The parties arbitrated this dispute before the American Arbitration Association, Commercial Arbitration Tribunal.

During a telephonic hearing in the arbitration, Whyaduck stated its intention to assert fraud and alter ego claims against DCL and Block personally. In response to this statement, Block offered to guarantee personally any award Whyaduck might obtain in the arbitration, if Whyaduck would waive and release its fraud and alter ego claims. Whyaduck agreed.

The parties proceeded to negotiate the terms of Block's guaranty. Block retained an attorney to review the guaranty proposed by Whyaduck, and he made several revisions to the document. Finally, while the arbitration was still pending, Block signed the guaranty. Whyaduck released its fraud and alter ego claims against DCL and Block in connection with the arbitration.

The guaranty provided that Block would personally guarantee "full and punctual payment and satisfaction of any and all Indebtedness" of DCL to Whyaduck "arising from the arbitration proceeding." The guaranty defined "Indebtedness" as "all debts, obligations and liabilities of DCL to Whyaduck in favor of Whyaduck in connection with the Arbitration, including the principal amount of any such award or judgment, any and all accrued interest thereon as permitted by law, and any and all costs and legal expenses related to the enforcement and/or collection of such award or judgment." Block acknowledged that Whyaduck was relying on the guaranty in releasing its fraud and alter ego claims and that his guaranty was an enforceable "separate and independent contract" supported by "full and ample consideration." The guaranty further provided that Block "agrees to pay reasonable attorneys' fees and all other costs and expenses which may be incurred by Whyaduck (or allocable to Whyaduck's counsel) in the enforcement of this

3

Guaranty, or the collection of any Indebtedness of DCL to Whyaduck, irrespective of whether suit is filed."[1]

The first paragraph of the guaranty, which Block added to the document, stated: "Only in the event that [DCL] defaults on paying Whyaduck all debts, obligations and liabilities of [DCL] and fails to correct such default in 30 days then Whyaduck may exercise the rights outlined herein to enforce collection of such debts, obligations and liabilities of DCL from Mitchell W. Block. If DCL provides timely payments and fulfills its obligations to Whyaduck then this Guaranty may not be exercised." The language of this paragraph and the use of the term "payments" give rise to one of the two issues in this appeal.

Whyaduck prevailed in the arbitration. On June 8, 2010 the arbitrator issued his final award. The arbitrator ruled that Whyaduck was entitled to royalties from DCL in the amount of $9,389.89 plus interest in the amount of $4,944.25. The arbitrator also ruled that neither side was entitled to an award of attorneys' fees because the distribution agreement did not contain an attorneys' fees provision, and that DCL had to pay the costs of the arbitration.

### B.     *Payment of the Arbitration Award*

DCL then began to pay the arbitration award, slowly and in irregular amounts.

On August 25, 2010 DCL paid $2,000. On September 3, 2010 Whyaduck wrote to Block advising that it would be proceeding to confirm the arbitration award. Whyaduck warned Block that his "proposal to pay the amounts due under the [Arbitration] Award, as well as the Continuing Guaranty, in periodic monthly installments is unacceptable." On September 8, 2010 the court entered a judgment, in the limited civil division, confirming the arbitration award and ordering DCL to pay Whyaduck $16,484.24, plus interest and court costs. On September 14, 2010 DCL paid $1,000.

---

[1]     Block also waived various rights and defenses of a surety under the Civil Code, including rights of exoneration, reimbursement, indemnification, and contribution.

On October 4, 2010 counsel for Whyaduck sent another demand letter to Block, advising him that Whyaduck had obtained a judgment confirming the arbitration award and warning that, unless the award were satisfied within 14 days, Whyaduck would file an action against Block on the guaranty. Whyaduck warned that it "will not tolerate any further delay in the payment of the amounts owed under the Final Judgment and the Continuing Guaranty." Whyaduck advised, "Obviously, the attorneys' fees associated with the filing and prosecution of" an action on the guaranty "will be considerable, and fully recoverable by Whyaduck from you personally."

On October 25, 2010 DCL paid another $1,000. After Whyaduck filed this action on October 28, 2010, DCL made no further payments for five months. DCL then paid $5,000 on March 29, 2011, and $5,000 on April 22, 2011. Whyaduck, while accepting these partial payments, continued to send demand letters to Block, emphasizing that he was personally liable for the award against DCL and that if he or DCL did not pay the amount in full, Whyaduck would hold him responsible for the attorneys' fees associated with this action.

C. *This Action*

Whyaduck filed this action originally as a limited civil case, seeking $21,394.48, consisting of the $16,484.24 judgment on the confirmed arbitration award and $4,910.24 in attorneys' fees and costs incurred to date. Block answered on December 7, 2010.

On May 2, 2011 DCL paid $3,195.38. On May 3, 2011 Block filed a document entitled "Notice of Deposit of Tender, Demand for Filing of Acknowledgment of Satisfaction of Judgment." In this document, Block stated that DCL had paid Whyaduck $3,195.38, which Block claimed "was the total amount of the unpaid debt." Block asserted that this amount was "incontest[a]ble."

5

Whyaduck contested it. On October 14, 2011 Whyaduck filed a first amended complaint alleging that Block owed at least $51,430 under the guaranty to date.**2** Whyaduck alleged that "[a]lthough the amount due under the [judgment confirming the arbitration award] was after months of litigation finally satisfied, Block has steadfastly refused to pay the balance of the amount still outstanding under the Guaranty (the 'Indebtedness')," which included $51,430 in "attorneys' fees incurred by Whyaduck in the enforcement of its express rights under the Guaranty . . . ."

The case went to trial on August 8, 2012. Block argued that the guaranty was not enforceable and that he did not breach the guaranty because it allowed DCL to make partial payments toward the award over time, which DCL had been making. Block relied on the reference in the first paragraph of the guaranty to "timely payments," and argued that "he unilaterally added the word 'payments' to the first paragraph of the Guaranty to create a 'payment plan' option with respect to any debts, obligations or liabilities for which he might become liable under the Guaranty."

Whyaduck prevailed again. The trial court ruled that the guaranty did "not provide for any such payment plan, and Block testified during trial that he understood that all amounts under the Arbitration Award and the Final Judgment were immediately due in full. Although Block testified at trial that he sought to negotiate, before the Guaranty was signed and before the Arbitration Award was entered, a right to pay any amounts later found to be due in connection with any Arbitration Award in installments, he also conceded that Whyaduck expressly rejected that concept."

The trial court stated in its August 30, 2012 written decision: "As for the meaning of the [guaranty] – whether the plural of 'payment' was significant or was made significant by [Block] causing partial payments to be made for a time and [Whyaduck] cashing the checks, the matter is a close call, but after hearing the witnesses and

---

**2** Whyaduck also filed on October 14, 2011 an ex parte application to reclassify the case as an unlimited case, which, although the order is not in the record, the court apparently granted.

6

reviewing the documents – including the rejection of this partial payment procedure set out in the letter from [Whyaduck's] counsel in September 2010 – the Court determines that [Whyaduck] did not accede to the multiple payment arrangement and rejected this construction of the guarantee. Nor did [Block] follow through on his claimed 'pay as I can' [or find convenient] scheme. There is no basis for [Block's] interpretation of the document that he could make partial payments as and when he wanted." The court also noted that "material portions of [Block's] testimony were lacking in credibility and his unilateral actions were a principal reason for the filing of the action which resulted in a result favorable to [Whyaduck]." The court concluded that Whyaduck was "the prevailing party in this litigation" and that "the action was necessary to collect the award . . . ." The court ruled that Whyaduck was "entitled to judgment for the amount paid with an acknowledgment of full satisfaction, attorneys fees and costs, both to be determined in appropriate post-trial proceedings."

On September 13, 2012 the trial court entered judgment stating that Whyaduck was the prevailing party on its claim against Block, and "that judgment is hereby entered in favor of Whyaduck and against Block in the amount of $17,195.38, which amount was deemed by Whyaduck to have been satisfied during the pendency of this litigation." The judgment also stated "that Whyaduck is entitled to recover its attorneys fees and costs, including 'prevailing party' attorneys' fees, in accordance with California Civil Code section 1717 and California Code of Civil Procedure section 1032."

On September 13, 2012 Whyaduck filed and served notice of entry of judgment. On November 6, 2012 Block filed a notice of appeal "from the Final Judgment of the court entered on September 13, 2012."

Meanwhile, on September 25, 2012 Whyaduck filed a motion for attorneys' fees. Although the attorneys' fees motion papers are not in the record on appeal, on December 14, 2012 the trial court apparently granted the motion in part and awarded Whyaduck attorneys' fees and costs in the amount of $85,500. The $85,500 in attorneys' fees and costs included fees associated with litigating a motion to strike filed by Block, motions by both sides for summary judgment, a motion by Whyaduck for reconsideration

of the trial court's order denying its motion for summary judgment, an ex parte application for leave to file a first amended complaint and to reclassify the case, a court trial, and a contested motion for attorneys' fees. The court added to the end of the September 13, 2012 judgment the words, "in the amount of $85,500 as of 12/14/12" for the amount of attorneys' fees and costs awarded.

## DISCUSSION

Block makes two arguments on appeal. First, he argues that the use of the term "timely payments" in the guaranty meant that DCL could make "periodic payments" with a 30-day right to cure any default, and that "the refusal in writing by Whyaduck to accept" DCL's periodic payments was "a breach excusing further performance under the guaranty." Second, Block argues that he "should have been deemed the prevailing party" because the "judgment resulted in a net monetary recovery of zero." Block asserts that because "the underlying debt on which Block's guaranty was based had been fully satisfied, irrespective of the language of the judgment against him, the award in favor of Whyaduck constituted a judgment with no net monetary recovery." We reject both arguments.[3]

A. *Whyaduck's Refusal To Accept "Periodic Payments" from DCL Did Not Excuse Block's Performance Under the Guaranty*

Block argues that because "the guaranty infers [*sic*] periodic payments, and it expressly provides for a 30 day period to cure a default," his "attempts on behalf of DCL constitute performance," and therefore "the refusal in writing by Whyaduck to accept them becomes a breach excusing further performance under the guaranty." Blocks states that because the trial court "rejected the argument that the agreement provided for

---

[3]    Block does not challenge the reasonableness of the amount of attorneys' fees that the trial court awarded.

8

periodic payments, it never addressed the issue of excuse." Whyaduck argues that nothing in the language of the guaranty authorized Block "to pay at his discretion and based upon personal whims," or allowed him "to make periodic payments [that would] discharge the guaranty."

"The threshold question is whether the contract is ambiguous—that is, reasonably susceptible to more than one interpretation." (*Scheenstra v. California Dairies, Inc.* (2013) 213 Cal.App.4th 370, 389; see *City of Bell v. Superior Court* (2013) 220 Cal.App.4th 236, 248 ["[w]hen a dispute regarding the meaning of a contractual provision exists, the court must first determine whether on its face the language is capable of differing or inconsistent reasonable interpretations"].) If there is an ambiguity, then "the appellate court must determine whether the parties have presented conflicting extrinsic evidence relevant to the meaning of the ambiguous language before it can proceed." (*Scheenstra*, *supra*, at p. 390.) "If no extrinsic evidence was presented or if the extrinsic evidence was not in conflict, the resolution of the ambiguity is a question of law, which is subject to independent review on appeal." (*Ibid*; see *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865, 866; *Wolf v. Superior Court* (2004) 114 Cal.App.4th 1343, 1351.) If there is evidence that "factually conflicts, the trial court's resolution of that conflict is reviewed for substantial evidence, otherwise the trial court's ultimate interpretation of the contract is reviewed de novo." (*Alameda County Flood Control & Water Conservation Dist. v. Department of Water Resources* (2013) 213 Cal.App.4th 1163, 1180.)

Here, although the trial court did not explicitly find that there was an ambiguity, the court did find that the significance of the guaranty's use of the plural term "payments" was "a close call," and the court considered the testimony of the witnesses and reviewed the documents submitted by the parties. Thus, the trial court essentially found that there was an ambiguity and resolved it against Block based on the extrinsic evidence at trial. This evidence included Whyaduck's rejection of Block's attempt to include in the guaranty a right to make installment payments, Block's acknowledged understanding that the full amount of the arbitration award was due immediately, Block's

9

failure to "follow through" on his proposal to pay as he could or as convenient, and Whyaduck's rejection of Block's "construction of the [guaranty]." Block does not argue that these findings are not supported by substantial evidence, and, in any event, because Block did not submit any evidence of the testimony at trial we are not even able to review whether the trial court's findings are supported by substantial evidence.

We agree with the trial court that the guaranty does not allow Block to "make partial payments as and when he wanted." There is nothing in the guaranty authorizing Block to make installment payments monthly, periodically, or whimsically, depending on his cash flow, nor does the guaranty set forth any payment schedule or formula. And there is certainly nothing in the guaranty allowing Block to make two $1,000 payments and a $2,000 payment in 2010, no payments from November 2010 to February 2011, and then two $5,000 payments and a $3,195.38 payment in 2011. The guaranty required Block to make "full and punctual payment and satisfaction of any and all Indebtedness" of DCL arising from the Whyaduck-DCL arbitration without the delay of an installment plan. The extrinsic evidence cited in the trial court's ruling, which Block does not challenge, is fully consistent with this interpretation.

Moreover, there is no provision in the debt Block "absolutely and unconditionally guarantee[d] full and punctual payment and satisfaction of," the arbitration award, for installment or periodic payments. The award states that "DCL is hereby ordered to pay to [Whyaduck] royalties due [Whyaduck] under the distribution agreement in the amount of $9,389.89," and that "DCL is hereby ordered to pay to [Whyaduck] pre-award interest in the amount of $4,944.25." The award also orders DCL to pay post-award interest on these two figures at 10 percent, commencing on the date of the award. Under Civil Code section 2807, after the expiration of the 30-day cure period Block was immediately liable on the guaranty "without demand or notice." (Civ. Code, § 2807; see *Escrow Agents' Fidelity Corp. v. Superior Court* (1992) 4 Cal.App.4th 491, 496 ["[a] surety is obligated by law to pay the creditor of its defaulting principal immediately upon the principal's default or defalcation"]; *Rodabaugh v. Kauffman* (1921) 53 Cal.App. 676, 682 ["appellant was a guarantor of payment and as such became liable on default of the

10

principal without demand or notice"]; see also *Gardner v. Donnelly* (1890) 86 Cal. 367, 373 [guarantors of a judgment against principal "became immediately liable" when creditor made demand for payment and principal refused].)

Therefore, Whyaduck's refusal to agree to Block's installment payment plan and to accept Block's periodic payments without objection did not breach the guaranty and excuse Block's performance. Block became liable for the entire amount of the "Indebtedness" under the guaranty when DCL failed to pay the arbitration award after the expiration of the 30-day cure period.

### B.  *The Trial Court Did Not Abuse its Discretion in Determining that Whyaduck Was the Prevailing Party*

The judgment awarded Whyaduck $17,195.38 in damages, deemed that amount satisfied, and declared that Whyaduck was the prevailing party. Block argues that he "should have been . . . the prevailing party" because the "judgment resulted in a net monetary recovery of zero." Block argues that Whyaduck "cannot be the prevailing party in this action" because "the underlying debt on which Block's guaranty was based had been fully satisfied, irrespective of the . . . judgment against him," so that "the award in favor of Whyaduck constituted a judgment with no net monetary recovery." Block concludes that "reversal of the judgment finding Whyaduck the prevailing party requires any costs and attorneys' fees to be reversed also."

#### 1.  Whyaduck Was the Prevailing Party and Entitled To Recover Costs

"'Prevailing party' includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant." (Code Civ. Proc., § 1032; *PNEC Corp. v. Meyer* (2010) 190 Cal.App.4th 66, 70, fn. 2.) "Generally, when a party falls squarely within one of the four situations enumerated in the definition of prevailing party under [Code of Civil Procedure] section 1032, that party is entitled to recover costs as a matter of right."

11

(*Chinn v. KMR Property Management* (2008) 166 Cal.App.4th 175, 188; see *Zintel Holdings, LLC v. McLean* (2012) 209 Cal.App.4th 431, 441 [ "" "[i]f a party fits one of the [four] definitions of 'prevailing' listed in [section] 1032[, subdivision] (a)(4) . . . that party is entitled as a matter of right to recover costs,"" " otherwise, "" "the prevailing party is determined by the court and the award of costs is discretionary"" "].)**4**  In order to recover attorneys' fees as the prevailing party under Civil Code section 1717, "a litigant [must also have] been determined to be the prevailing party under [Code of Civil Procedure] section 1032."  (*Zintel Holdings, LLC*, *supra*, 209 Cal.App.4th at p. 438, fn. 1.)

Although Block focuses on the "net monetary recovery" language of Code of Civil Procedure section 1032, subdivision (a)(4), we construe his argument to be that Whyaduck is not entitled to costs because neither he nor Whyaduck obtained any relief, and therefore he, not Whyaduck, was the prevailing party under section 1032, subdivision (a)(4).  (See *Cussler v. Crusader Entertainment, LLC* (2012) 212 Cal.App.4th 356, 371, italics omitted [for purposes of costs under section 1032, "'prevailing party'" includes "'a defendant where neither plaintiff nor defendant obtains any relief'"].)  This is the necessary implication of Block's statements that "the award in favor of Whyaduck constituted a judgment with no net monetary recovery," that "[u]nder this scenario, Whyaduck cannot be the prevailing party in this action," and that "Block should have been deemed the prevailing party."  In addition, the failure of Whyaduck to obtain a net

---

**4**    Block does not argue that he was the prevailing party because a dismissal was entered in his favor.  (See Code Civ. Proc., § 1032, subdivision (a)(4) [prevailing party includes "defendant in whose favor a dismissal is entered"]; *Chinn v. KMR Property Management*, *supra*, 166 Cal.App.4th. at pp. 187-190.)  There is also nothing in the record suggesting that the trial court awarded costs in favor of Whyaduck as an exercise of discretion under circumstances "'other than as specified'" (*Chinn*, *supra*, at pp. 187, 189) in the four enumerated situations, and Block does not argue that the trial court exercised or abused any such discretion.  In fact, Block does not cite or discuss Code of Civil Procedure section 1032 in his opening brief at all, and only mentions Code of Civil Procedure section 1032 in his reply brief in passing for the proposition that "'[p]revailing party' includes the party with a net monetary recovery . . . ."

12

monetary recovery would not necessarily have precluded Whyaduck from recovering its costs because Whyaduck still may have been entitled to recover its costs under one of the other mandatory provisions or the discretionary provision of Code of Civil Procedure section 1032. If Block were the prevailing party because neither side obtained any relief, however, then Whyaduck would not be entitled to recover its costs.

The judgment in this case states that "judgment is hereby entered in favor of Whyaduck and against Block in the amount of $17,195.38, which amount was deemed by Whyaduck to have been satisfied during the pendency of this litigation." Whether a plaintiff who obtains a judgment awarding $17,195.38 that has already been, and which the court deems, satisfied has obtained any relief for purposes of awarding costs under Code of Civil Procedure section 1032 is a difficult question. For example, under Code of Civil Procedure section 877, "'[a] plaintiff who obtains a verdict against a defendant that is offset to zero by settlements with other defendants does not gain any money free from deductions,'" and therefore "'*gains nothing* because the deductions reduce the verdict to zero.' [Citation.]" (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1334.) Does the same rule apply when the verdict against a defendant is offset to zero not by "'indirect offsets' . . . from a plaintiff's settlement with other defendants" (*id.* at p. 1336), but by a "direct offset" from the same defendant? Block asserts that while *Goodman*, a net monetary recovery case, "related to contributions by co-defendants, the principle should be the same for any money paid to satisfy a plaintiff's claimed debt prior to the trial thereof," but Block does not provide any authority in support of his assertion. In addition, where, as here, the trial court does not reduce the verdict and judgment to zero, but instead enters a judgment that awards an amount deemed by the judgment as fully satisfied, has the plaintiff obtained any real economic relief?

There is not much of a record in this case for us to decide this issue.[5] There is no evidence in the record that Whyaduck filed a memorandum of costs or that Block filed a

---

[5] "A trial court's determination that one party in litigation was the prevailing party is reviewed for abuse of discretion." (*Arias v. Katella Townhouse Homeowners Assn.,*

13

motion to strike or tax costs. The trial court's statement of decision does not state that the court awarded Whyaduck costs because it found Whyaduck was a prevailing party entitled to recover costs as a matter of right under one of the four mandatory costs provisions of Code of Civil Procedure section 1032, subdivision (a)(4), or as a matter of the court's discretion. The trial court's December 14, 2012 handwritten notation on the judgment awards Whyaduck $85,500 in attorneys' fees and costs, "including 'prevailing party' attorneys' fees," without distinguishing between fees and costs or specifying how much the court awarded of each. Similarly, Block's arguments on appeal do not distinguish between costs and fees.

Had Whyaduck recovered its attorneys' fees as damages at trial, we would have no difficulty concluding that Whyaduck obtained some relief because the judgment would have awarded more than the deemed-satisfied amount of $17,195.38. Whyaduck did attempt to recover its fees as damages at trial. Whyaduck asked the trial court in its posttrial closing briefs to award attorneys' fees of $113,744.75 as "damages" and then reserved the right to seek additional attorneys' fees incurred after the trial "by way of post-judgment motion." Whyaduck presented evidence at the trial of the amount of attorneys' fees Whyaduck sought as damages (although the two exhibits showing the amount of attorneys' fees requested, Exhibits 19 and 20, are not included in the record on appeal), and Block argued that the amount sought by Whyaduck was unreasonable. Block also argued to the trial court that Whyaduck should present its claim for attorneys' fees in a posttrial motion, not as part of its damages claim at trial.

The trial court did not include the amount of attorneys' fees in the judgment as damages. The trial court stated in its statement of decision that "[o]nce the balance due under the arbitration award was paid, [Whyaduck] maintained this action on the theory that it was required to plead and prove its attorneys fees incurred in enforcing the guaranty. It appears that [Whyaduck] is abandoning that position. Thus, in its closing

_Inc._ (2005) 127 Cal.App.4th 847, 852; see _Chinn v. KMR Property Management_, _supra_, 166 Cal.App.4th at p. 196.)

14

brief, filed August 21, [Whyaduck] cites *Sears v. Baccaglio* (1998) 60 Cal.App.4th 1136, which can be read as standing for the proposition that the proper means to collect attorneys fees on an indemnity or guarantee is not to plead them as a special item of damages, but rather to file a motion for fees after entry of judgment and determination by the court of the prevailing party." We can find nothing in the record supporting the trial court's statement that Whyaduck "abandoned" its position of proving its attorneys' fees as damages, and Whyaduck did not cite *Sears v. Baccaglio* for the proposition that the "proper means" for recovering its attorneys' fees was by filing a posttrial motion rather than by proving them at trial.**6**

Nor do we read *Sears v. Baccaglio*, *supra*, 60 Cal.App.4th 1136 to stand for this proposition. To the contrary, Whyaduck sued Block for the "Indebtedness" he had guaranteed and the attorneys' fees Whyaduck incurred before it filed this action, as well as those Whyaduck incurred in this action, all of which are included in the definition of "Indebtedness" and were elements of Whyaduck's damages to be proven at trial. (See *Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 678, fn. 16 ["'[w]here attorney fees are incurred in a prior action, or sought in a proceeding as damages . . . then the claim for attorney fees is part of the damage sought in the principal action,'" and must be "'pleaded and proven — as any other item of damages — at trial'"]; *Khavarian Enterprises, Inc. v. Commline, Inc.* (2013) 216 Cal.App.4th 310, 327 [where "fees are part of the relief sought" they "must be pleaded and proved at trial, such as with the third party tort doctrine"]; *Golden Eagle Ins. Co. v. Insurance Co. of the West* (2002) 99 Cal.App.4th 837, 852 ["the indemnitee's attorney fees constitute an 'item of damages' for the indemnitor's breach of its indemnity obligation"].) The provision in the guaranty authorizing the recovery of reasonable attorneys' fees incurred in the

---

**6** Whyaduck cited *Sears v. Baccaglio*, *supra*, 60 Cal.App.4th 1136 in support of its argument that it was "entitled to recover the full measure of its attorneys' fees and costs" under the guaranty, and argued that the court in that case awarded fees "despite the fact that [the] party seeking to enforce the guaranty had already recovered the full measure of principal due under the guaranty from other sources."

15

enforcement of the guaranty provided another basis for recovery of Whyaduck's fees, and the appropriate procedure for recovering attorneys' fees under that provision may well have been by posttrial motion. But as part of "Indebtedness" the attorneys' fees claimed by Whyaduck were damages to be proven at trial.

In the somewhat unusual circumstances of this case, we do not think the trial court's decision, probably erroneous, to determine the amount of attorneys' fees to which Whyaduck was entitled by posttrial motion, rather than at trial as Whyaduck had requested in its trial briefs, should deprive Whyaduck of prevailing party status under Code of Civil Procedure section 1032. The fact that the judgment awards an amount that is deemed satisfied is not the fault of Whyaduck but is a consequence of the trial court's decision to calculate the amount of attorneys' fees after trial. Block, who argued that the court should determine the amount of any attorneys' fees as costs after trial and not as damages, should not now be able to take advantage of the trial court's decision to follow that procedure and argue that Whyaduck did not recover those attorneys' fees at trial. Thus, even if the judgment awarding Whyaduck $17,195.38 and then deeming it satisfied does not qualify as "obtain[ing] any relief," including the attorneys' fees that the trial court should have included in the judgment is some relief and, in fact, is a net monetary recovery. Therefore, Whyaduck, not Block, was the prevailing party under Code of Civil Procedure section 1032, and was entitled to recover its costs.

2. Whyaduck Was the Prevailing Party and Entitled To Recover Fees

Whether Whyaduck is entitled to reasonable attorneys' fees as the prevailing party under Civil Code section 1717 is not as difficult a question.[7] "The definition of

---

[7] "[Civil Code s]ection 1717 'vests the trial court with discretion in making the prevailing party determination'" and "'[w]e will not disturb the trial court's determination absent "a manifest abuse of discretion, a prejudicial error of law, or necessary findings not supported by substantial evidence."'" (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 239; accord, *Zintel Holdings, LLC v. McLean*, *supra*, 209 Cal.App.4th at p. 439.) The legal basis of an award of attorneys' fees under Civil Code section 1717 is reviewed de novo as a question of law. (*Cullen v.*

16

prevailing party under [Civil Code] section 1717 . . . differs significantly from [Code of Civil Procedure] section 1032. Rather than focusing on who receives the net monetary award, [Civil Code] section 1717 defines the prevailing party as the one who recovers 'a greater relief in the action on the contract.'" (*Sears v. Baccaglio*, *supra*, 60 Cal.App.4th at p. 1143; see *Goodman v. Lozano*, *supra*, 47 Cal.4th at p. 1335, fn. 3; cf. *Zintel Holdings, LLC v. McLean*, *supra*, 209 Cal.App.4th at p. 438, fn. 1 ["in a contract action the prevailing party . . . under [Code of Civil Procedure] section 1032 is not necessarily also the prevailing party under [Civil Code] section 1717 and entitled to recover attorney fees under that provision"].) Under Civil Code section 1717, "in deciding whether there is a 'party prevailing on the contract,' the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. The prevailing party determination is to be made only upon final resolution of the contract claims and only by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.'" (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 876; see *Ritter & Ritter, Inc. Pension & Profit Plan v. The Churchill Condominium Assn.* (2008) 166 Cal.App.4th 103, 126.) "[*I*]*n determining litigation success*, courts should respect substance rather than form, and to this extent should be guided by 'equitable considerations.'" (*Hsu v. Abbara*, *supra*, 9 Cal.4th at p. 877; see *In re Tobacco Cases I* (2013) 216 Cal.App.4th 570, 577.)

The trial court did not abuse its discretion in finding that Whyaduck achieved its litigation objectives and therefore was the prevailing party under Civil Code section 1717. As the trial court aptly noted, "[i]t took the filing of the litigation and the passage of several months thereafter for [Whyaduck] to collect the amount awarded by the arbitrator plus interest" and "the action was necessary to collect on the award." This was Whyaduck's litigation goal, and Whyaduck achieved it by forcing Block to pay the

---

*Corwin* (2012) 206 Cal.App.4th 1074, 1078; *Zagami, Inc. v. James A. Crone, Inc.* (2008) 160 Cal.App.4th 1083, 1096.)

17

balance remaining on the arbitration award, $17,195.38 of which DCL paid only after Whyaduck had confirmed the arbitration award and had filed this action. The fact that Whyaduck recovered this amount as a result of a series of prejudgment payments does not mean Whyaduck was not the prevailing party. (See *Sears v. Baccaglio*, *supra*, 60 Cal.App.4th at p. 1156 ["where there is evidence of other success, such as . . . by collection of a portion of the funds at issue, whether by settlement or through a collateral action, the court is entitled to take such recovery into account when calculating which side prevailed"].) Whyaduck also recovered the attorneys' fees and costs it incurred trying to collect the arbitration award, including the costs and expenses of filing and litigating this action for over six months before Block caused DCL to pay the balance due on the award. Taking into account the "equitable consideration" (*Hsu v. Abbara*, *supra*, 9 Cal.4th at p. 877) that Whyaduck in this litigation obtained everything it sought to recover from Block, Whyaduck was the prevailing party for purposes of prevailing party attorneys' fees under Civil Code section 1717. (See *Lu v. Grewal* (2005) 130 Cal.App.4th 841, 852 ["'[a] party can fail to recover a net monetary judgment and yet prevail for purposes of collecting fees in an account founded in contract'"]; *Sears v. Baccaglio*, *supra*, 60 Cal.App.4th at p. 1152 [even when a party does not obtain any recovery, that party may still be a prevailing party].)

Finally, Block argues in his reply brief that Civil Code section 1717, subdivision (b)(2), "provides that when a defendant tenders an amount in full payment to a plaintiff that the plaintiff was entitled [to] results in a dismissal of the action in the answer, and the amount so tendered is found true, the defendant is deemed the prevailing party," and that this rule should apply where "a plaintiff's claim for money is satisfied after the filing of the suit, but before trial begins." Block mischaracterizes the statute he cites. The second paragraph of Civil Code section 1717, subdivision (b)(2), actually provides: "Where the defendant alleges in his or her answer that he or she tendered to the plaintiff the full amount to which he or she was entitled, and thereupon deposits in court for the plaintiff, the amount so tendered, and the allegation is found to be true, then the defendant is deemed to be a party prevailing on the contract within the meaning of this

18

section." There is no evidence that Block alleged in his answer that he tendered the full amount due to Whyaduck (indeed, the answer is not even in the record), or that Block deposited this amount in court.

## DISPOSITION

The judgment is affirmed. Whyaduck is to recover its costs on appeal.

SEGAL, J.[*]

We concur:

PERLUSS, P. J.

WOODS, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.